IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAYNIE L. BEARD,                        )
                                        )      Civil Action No: 1:14-CV-01162
                    Plaintiff,          )
                                        )      Honorable William W. Caldwell
        vs.                             )
                                        )      Electronically Filed
OCWEN LOAN SERVICING, LLC, UDREN        )
LAW OFFICES, PC and CATHY MOORE,        )      **JURY TRIAL DEMANDED**
                                        )
                    Defendants.         )

**<u>BRIEF IN OPPOSITION TO MOTION OF DEFENDANTS UDREN
LAW OFFICES, PC AND CATHY MOORE FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

I.     PROCEDURAL HISTORY……………………………………………………………1

II.    STATEMENT OF FACTS…………………………………………………….......1

III.   COUNTER STATEMENT OF ISSUES PRESENTED…………………………….4

IV.   ARGUMENT…………………………………………………………………...5

     A.     Standard of Review………………………………………………………..5

           1.     Summary Judgment………………………………………………5

           2.     The Fair Debt Collection Practices Act,
                 15 U.S.C. §1692, et. seq………………………………………..5

     B.     The Fair Debt Collection Practices Act, 15 U.S.C. §1692, et. seq………………..6

           1.     The FDCPA Applies to Attorneys …………….…………….…....……7

           2.     The Right to Charge and/or Collect Attorneys' Fees Under the
                 Mortgage and Applicable Law is a Right Reserved Unto the
                 Lender and the Udren Defendants' Rights are Derivative
                 From the Lender ……………………………………………..…....7

           3.     The "Least Sophisticated Debtor" Standard Applies…..…………………9

           4.     It is Irrelevant that the Communication was Received
                 by an Attorney …………………………………………………...10

           5.     The Liability of Ocwen, Udren and Moore is Compelling under
                 15 U.S.C. §1692e(2)(A), (B), and (10)…………………………..……12

           6.     The Liability of Ocwen, Udren and Moore is Compelling
                 under 15 U.S.C. §1692f(1)…………………….………………………15

V.    CONCLUSION……………………………………………………………...17

i

## **TABLE OF AUTHORITIES**

**Cases**

Allen ex rel. Martin v. Lasalle Bank, NA, 629 F.3d 364 (3d Cir. 2011) ......................... 10, 11, 12

Alyeska Type One Service Co. v. Wilderness Society,
421 U.S. 240, 95 S. Ct. 1612 (1975)................................................................................ 7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505,
91 L.Ed.2d 202 (1986) .................................................................................................... 5

Blandina v. Midland Funding, LLC,
2014 U.S. Dist. LEXIS 173776 (E.D. Pa. Dec. 4, 2014) ............................................... 9

Brown v. Card Serv. Ctr., 464 F.3d 450 (3d Cir. 2006) .......................................... 5, 9

Caprio v. Health Care Revenue Recovery Grp., LLC, 709 F.3d 142 (3d Cir. 2013) ................... 10

Galuska v. Collectors Training Inst. Of Ill., Inc.,
2008 U.S. DIST. LEXIS 39508, *8 (M.D. Pa. May 13, 2008)....................................... 5

Glazer v. Chase Home Fin., LLC, 704 F.3d 453 (6th Cir. 2013) .................................. 6

Heintz v. Jenkins, 514 U.S. 291 (1995) ......................................................................... 7

Jama Corp. v. Gupta, Civ. A. Nos. 3:99-CV-01624 & 1574,
2008 U.S. Dist. LEXIS 702, (M. D. Pa. Jan. 4, 2008)................................................... 7

Jarzyna v. Home Property, L.P., 763 F. Supp.2d 742 (E.D. Pa. 2011).......................... 9

Kaymark v. Bank of America, N.A., et.al. 783 F. 3d 168 (3d Cir. 2015)............................ passim

Lukawski v. Client Servs., Inc., 2013 U.S. Dist. LEXIS 124075 (M.D. Pa. Aug. 29, 2013)......... 9

Martsolf v. JBC Legal Group, PC, Civ. A. No. 1:04-CV-1346,
2008 U.S. DIST. LEXIS 6876, 2008 WL 275791, at *3 (M.D. Pa. Jan. 30, 2008)....................... 5

McLaughlin v. Phalen, Hallinan & Schmeig, LLP, 756 F.3d 240 (3d Cir. 2014)................ passim

Merlino v. Delaware County, 556 Pa. 422, 728 A.2d 949 (Pa. 1999) ........................... 7

Michalak v. ARS National Systems, Inc.,
2011 U.S. Dist. LEXIS 142976 (M.D. Pa. Dec. 13, 2011).......................................... 9

ii

O'Brien v. Travelers Prop. & Cas. Ins. Co., 65 F. App'x, 853, (3d Cir. 2003) ............................. 7

Piper v. Portnoff Law Associates, Ltd., 396 F.3d 227 (3d Cir. 2005) ............................................ 7

Rosenau v. Unifund Corp., 539 F.3d 218 (3d Cir. 2008) ............................................................. 14

Saini v. Bloomsburg Univ. Faculty, 826 F. Supp. 882 (M.D. Pa. 1993) ........................................ 5

Stuart v. Udren Law Offices, P.C., 25 F. Supp.3d 504 (2014) ..................................................... 14

Wilson v. Quadramed Corp., 225 F.3d 350 (3d Cir. 2000) ....................................................... 5, 9

## Other Authorities

15 U.S.C. §1692, et. seq. ...................................................................................................... 1, 5, 6

15 U.S.C. §1692e(10) ........................................................................................................... 4, 9, 12

15 U.S.C. §1692e(2)(A) (B) ................................................................................................. 4, 9, 12

15 U.S.C. §1692f(1) ......................................................................................................... 4, 9, 15, 16

Pennsylvania Loan Interest and Protection Law, Act of January 30, 1974,
P.L. 13, No. 6 as amended, 41 P.S. §406 ..................................................................... 8, 9, 13, 16

**BRIEF IN OPPOSITION TO MOTION OF DEFENDANTS UDREN
LAW OFFICES, PC AND CATHY MOORE FOR SUMMARY JUDGMENT**

AND NOW, comes the Plaintiff, Jaynie L. Beard ("Beard"), by her undersigned counsel, and files the within Brief in Opposition to the Motion of Defendants Udren Law Offices, PC ("Udren") and Cathy Moore ("Moore") (collectively "Udren Defendants") for Summary Judgment.

## I.      PROCEDURAL HISTORY

On June 17, 2014 Ms. Beard filed this action under the federal Fair Debt Collection Practices Act, 15 U.S.C. §1692, et. seq. (the "FDCPA"), seeking redress for the Defendants' abusive debt collection practices.

Answers and Affirmative Defenses were filed by the Defendants. The parties exchanged Rule 26(a) information, participated in a Rule 16 Case Management conference, participated in a Mediation which proved unsuccessful and have conducted discovery. Each party is now seeking Summary Judgment.

## II.      STATEMENT OF FACTS

Ms. Beard is the sole owner and resides at 3515 Schoolhouse Lane, Susquehanna Township, Dauphin County, Pennsylvania 17109 ("Property").

On April 25, 2003, Beard granted Columbia National Incorporated a mortgage upon the Property. In August 2012 Ms. Beard became delinquent on account of her mortgage payments. (Act 91 Notice dated November 26, 2012, Appendix, ("App.") Exhibit ("Ex.") "A").

On March 12, 2013, AHM SV, Inc., f/k/a American Home Mortgage Servicing, Inc., f/k/a Columbia National Incorporated d/b/a Columbia National Inc. assigned said Mortgage to Homeward Residential, Inc. ("Homeward"). (Complaint in Mortgage Foreclosure, ("Compl.") ¶

1

1 filed by Ocwen Loan Servicing, LLC ("Ocwen") in the Dauphin County Court of Common Pleas at Case No. 2014-CV-274-MF, App., Ex. "B").

Ocwen collects and services mortgage debt nationwide including Pennsylvania. On November 8, 2013, Homeward assigned said Mortgage to Ocwen (App., Ex. "B," ¶ 1), (Assignment of Mortgage, App., Ex. "C").

Udren, a New Jersey corporate entity, is a law firm with an address in Cherry Hill, New Jersey.  Moore is an individual classified as a "Legal Assistant" and employed by Udren.

In August 2013, Ms. Beard made inquiry of Ocwen as to the amount necessary to bring her mortgage current. ("Reinstatement Request"). Ms. Beard's aunt and uncle who had previously offered to assist Beard in bringing her account current were again willing and able to bring her mortgage delinquency current. (Deposition Transcript ("Dep.") of Beard, App., Ex. "D," PP 26:1– 27:13, 53:12-15, 70:1-5, and 75:5-9). ***Ocwen directed Udren and Moore to prepare the Reinstatement Quote***. (See Dep. of Moore, App., Ex. "E," PP 24:9 – 25:25).

On September 11, 2013, Moore and Udren faxed ***to the attention*** of Ms. Beard, correspondence dated September 9, 2013. (App., Ex. "F")  The instructions on page 2 provides in relevant part as follows:

> As requested, enclosed please find our reinstatement form ***indicating the sum needed*** to reinstate the referenced loan. (emphasis added)

> Please note the following:

> 1.    **PAYMENT MUST BE SENT TO OUR NEW JERSEY OFFICE** and received by us no later than Two (2) days **prior** to the "Reinstatement Amount Anticipated Good Through Date" indicated on the payoff form attached.  Thereafter, the Reinstatement amount may change and your check may be returned to you.

2

2.      The enclosed payoff amount must be in the form of **Cashier's Check, Certified Check, Cash or Money Order payable to UDREN LAW OFFICE, P.C.**  Any other form of payment **will be returned** to you.

**PURSUANT TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT, THIS LAW FIRM IS DEEMED TO BE A DEBT COLLECTOR AND THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

(emphasis in the original).

There were two "**Reinstatement Information Notice[s]**." attached.

The first Notice specified that "**REINSTATEMENT AMOUNT GOOD THROUGH September 9, 2013**" in the total amount of **$6,418.87**.   Being that said Notice was not transmitted until September 11, 2013, it was meaningless when it was transmitted.  The second Notice indicated that "**REINSTATEMENT AMOUNT ANTICIPATED GOOD THROUGH 9/20/13**" and claimed a total to be due of **$8,123.87**. This amount included the $6,418.87 listed on the first Notice plus the following additional charges:

| | | |
|---|---|---|
| a. | Clerk of Court - Complaint Filing Cost | $  162.00 |
| b. | Service of Process Cost | $  400.00 |
| c. | Clerk of Court - Discontinue Action Cost | $    13.00 |
| d. | Overnight Charges/Wire Cost | $    25.00 |
| e. | Attorney Foreclosure Fee | $1,105.00 |

To comply required that certified funds be **_received_** by Udren no later than September 18, 2013.  It is undisputed that the Udren and Moore were attempting to collect the funds on behalf of Ocwen. (Dep. Moore, App., Ex. "E," PP 10:2-7, 12:22 – 13:16).

It is undisputed that as of, September 11, 18, or 20, 2013, no Mortgage Foreclosure had been filed. Indeed, the **_Verification to the Complaint was signed on December 31, 2013_** and the

3

Complaint was filed on January 9, 2014. (Compl., App., Ex. "B").  On March 13, 2015, the Trial

Court entered an Order granting Judgment to Beard against Ocwen.[1]

### III.   COUNTER STATEMENT OF ISSUES PRESENTED

A.     Whether the right to charge and/or collect attorneys' fees under the Mortgage and

Applicable Law is a right reserved unto the Lender and Udren's rights are only derivative from

the Lender?                                                    ***Suggested Answer:    YES.***

B.     Whether the "least sophisticated debtor" standard applies where the

communication is directed to the attention of the debtor and is intended to be seen and acted

upon by the debtor?                                           ***Suggested Answer:    YES.***

C.     Whether the Reinstatement Information Notice(s) violate the FDCPA, 15 U.S.C.

§1692e(2)(A) (B) and (10) by **(i)** misrepresenting the character, amount, or legal status of a debt;

**(ii)** by misrepresenting the compensation which may be lawfully received by a debt collector,

and **(iii)** by using false representation or deceptive means to collect or attempt to collect a debt --

i.e., that Ocwen, Udren and Moore were entitled to collect an attorney foreclosure fee of $1,105;

a Complaint filing cost of $162; a service of process cost of $400; a discontinue action cost of

$13; and an overnight charges/wire cost of $25 when none of these charges had been incurred,

none of these services had yet been rendered, none were rendered for at least four months

thereafter, and some of these charges were exaggerated?      ***Suggested answer:    YES***.

D.     Whether the Reinstatement Information Notice(s) violate the FDCPA, 15 U.S.C.

§1692f(1) by misrepresenting that Ocwen, Udren, and Moore were entitled to collect these

additional fees and costs when such amounts were not expressly authorized by the agreement

---

[1]       Ocwen has appealed the judgment to the Pennsylvania Superior Court.

creating the debt and were not permitted by applicable law?

*Suggested Answer:   YES.*

## IV.    ARGUMENT

### A.    Standard of Review

#### 1.    Summary Judgment

"Summary judgment is appropriate if the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Saini v. Bloomsburg Univ. Faculty*, 826 F. Supp. 882, 885 (M.D. Pa. 1993) (quoting Fed. R. Civ. P. 56(c)).   A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.   *Id.*

#### 2.    The Fair Debt Collection Practices Act, 15 U.S.C. §1692, et. seq.

Whether a communication is false and misleading under the FDCPA, 15 U.S.C. §1692, et. seq. presents a question of law for the court.   *Wilson v. Quadramed Corp.*, 225 F.3d 350 (3d Cir. 2000); *Galuska v. Collectors Training Inst. Of Ill., Inc.*, 2008 U.S. DIST. LEXIS 39508, *8 (M.D. Pa. May 13, 2008); *Martsolf v. JBC Legal Group, PC*, Civ. A. No. 1:04-CV-1346, 2008 U.S. DIST. LEXIS 6876, 2008 WL 275791, at *3 (M.D. Pa. Jan. 30, 2008).

In the Third circuit, courts must analyze the communication from the perspective of the "least sophisticated debtor" standard.   *Brown v. Card Serv. Ctr.,* 464 F.3d 450, 454 (3d Cir. 2006).   *McLaughlin v. Phalen, Hallinan & Schmeig,* LLP, 756 F.3d 240, 246 (3d Cir. 2014).

"This low standard 'effectuate[s] the basic purpose of the FDCPA: protect all consumers, the gullible as well as the shrewd.'" *McLaughlin*, 756 F. 3d at 246.

> **B.**   **The Fair Debt Collection Practices Act, 15 U.S.C. §1692, et. seq.**

The relevant definitions in this case are as follows:

> §1692a.  **Definitions**
>> As used in this subchapter –
>
> . . .
>> (2)    The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.
>> (3)    The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.
>
> . . .
>> (5)    The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.
>> (6)    the term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.
>
> . . .

It is undisputed that Ms. Beard meets the definition of a "consumer" and that the Reinstatement Information Notice(s) are "communication" as defined in the statute. The collection of past-due mortgage payments constitutes a "debt."  Even the act of foreclosure meets the broad definition of "debt collection" under the FDCPA.  *See, McLaughlin*, 756 F.3d at 245 ("debt collection" is "activity undertaken for the general purpose of inducing payment"); *Glazer v. Chase Home Fin., LLC*, 704 F.3d 453, 461 (6th Cir. 2013) ( "[f]oreclosure's legal nature...does not prevent it from being debt collection.").

6

1.      **The FDCPA Applies to Attorneys**

Attorneys "engage[d] in consumer-debt-collection activity, even when that activity consists of litigation" are covered by the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995); *Piper v. Portnoff Law Associates, Ltd.*, 396 F.3d 227, 234 (3d Cir. 2005) ("[i]f a communication meets the [FDCPA's] definition of an effort by a 'debt collector' to collect a 'debt' from a 'consumer,' it is not relevant that it came in the context of litigation.)

Udren acknowledged that it was a "debt collector" in the communication to Beard when it transmitted the Reinstatement Information Notice(s). (App. Ex. "F").   Moore testified that she regularly collects payments in the course of her daily activities. (Moore Dep. App., Ex. "E," PP 9:24 – 10:7).

2.      **The Right to Charge and/or Collect Attorneys' Fees Under the Mortgage and Applicable Law is a Right Reserved Unto the Lender and the Udren Defendants' Rights are Derivative From the Lender.**

Under the "American Rule," the prevailing litigant is ordinarily not entitled to a reasonable attorneys' fee from the unsuccessful litigant. *Alyeska Type One Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S. Ct. 1612, 1616 (1975).   Pennsylvania state courts follow the American Rule. *Merlino v. Delaware County*, 556 Pa. 422, 728 A.2d 949, 951 (Pa. 1999) ("this court has consistently followed the general, American Rule that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception.").   *See also, O'Brien v. Travelers Prop. & Cas. Ins. Co.*, 65 F. App'x, 853, (3d Cir. 2003).   Pennsylvania courts have routinely applied this American Rule to deny recover of attorneys' fees in breach of contract and negligence cases. *See, e.g., Jama Corp. v. Gupta*, Civ. A. Nos. 3:99-CV-01624 & 1574, 2008 U.S. Dist. LEXIS 702, (M. D. Pa. Jan. 4, 2008) (internal citations omitted).

In the case at bar, the Mortgage (App. Ex. "K") grants authority to the "Lender" to collect its attorneys' fees from the debtor.  These rights are granted in paragraphs 9, 14 and 22 of the mortgage.  However, there are limitations expressed in each of these provisions that circumscribe these rights.  Paragraph 14 states: "Lender may not charge fees that are expressly prohibited by this security instrument or by **Applicable Law**."  (emphasis added).  Paragraph 22 of the Mortgage permits acceleration, foreclosure and sale of the property and provides, "Lender shall be entitled to collect all expenses *incurred* in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence *to the extent permitted by Applicable Law*."  (emphasis added).

The "Applicable Law" governing attorneys' fees in mortgage delinquency cases is the Pennsylvania Loan Interest and Protection Law, Act of January 30, 1974, P.L. 13, No. 6 as amended. 41 P.S. §406, provides in pertinent part as follows:

> Attorney's Fees Payable.  – With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:
> . . .
>  (3)     Prior to commencement of foreclosure or other legal action, attorneys' fees which are reasonable and actually incurred **not in excess of fifty dollars ($50)** … (emphasis added).

Thus, there is nothing in the Mortgage which grants the Udren Defendants any independent rights to charge and/or collect attorneys' fees.  Rather, the claim for attorneys' fees is a claim asserted by the Udren Defendants as *debt collectors* to collect the attorneys' fees being claimed by the lender – Ocwen.  If, Ocwen has no authority to charge and/or collect attorneys' fees beyond the $50, then a fortiori the Udren Defendants have no right to attempt to collect the same either.  The Udren Defendants misrepresent the argument of Beard in asserting that they

cannot be held liable for a violation of 41 P.S. §406, in that they are not a "residential mortgage lender." [2] That is not Beard's contention. Rather, Beard maintains, that if Ocwen was barred from collecting more than $50 of attorneys' fees prior to the "commencement of foreclosure action," then the attempt by the Udren Defendants to collect such excess amount is a violation of 15 U.S.C. §1692e(2)(A), (B), (10) and §1692f(1). In light of the foregoing, as Ocwen was prohibited by the Mortgage and Applicable Law from imposing the (i) attorney foreclosure fee of $1,105, (ii) a complaint filing cost of $162, (iii) an exaggerated service of process cost of $400, (iv) a discontinuance action cost of $13 and (v) an overnight charge/wire cost of $25, the Udren Defendants had no right to demand such charges either.

### 3.   The "Least Sophisticated Debtor" Standard Applies

The issue of whether a collection letter meets the "least sophisticated debtor" standard is a question of law to be determined by the court. *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000); *Jarzyna v. Home Property, L.P.*, 763 F. Supp.2d 742, 748 (E.D. Pa. 2011); *Michalak v. ARS National Systems, Inc.*, 2011 U.S. Dist. LEXIS 142976 (M.D. Pa. Dec. 13, 2011).  It is immaterial whether Beard was misled; the issue is whether the "least sophisticated debtor" would be misled.  *See, e.g., Lukawski v. Client Servs., Inc.*, 2013 U.S. Dist. LEXIS 124075 (M.D. Pa. Aug. 29, 2013); *Blandina v. Midland Funding, LLC*, 2014 U.S. Dist. LEXIS 173776 (E.D. Pa. Dec. 4, 2014).

"The FDCPA is a remedial statute, thus we construe its language broadly so as to effect its purpose." *Brown v. Card Serv. Ctr.,* 464 F.3d 450, 454 (3d Cir. 2006) (citations omitted).  As

---

[2]      The Udren Defendants cite *Glover v. Udren Law Offices, P.C.*, 2014 Pa. Super. 82, 92 A.3d 24 (2014) which holds "[t]he law is clear, however, that Section 406 of Pennsylvania's Act 6 applies only to "residential mortgage lenders" which Udren is not.  The Pennsylvania Supreme Court has recently granted allocatur to consider that particular issue. (App. Ex. "L")

[a] remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes. *Caprio v. Health Care Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013).

As will be illustrated in Sections 5 and 6, the Reinstatement Information Notice(s) would clearly mislead the "least sophisticated debtor," and thus Ocwen, Udren and Moore should be held liable to Beard.

### 4.      It is Irrelevant that the Communication was Received by an Attorney

In the Third Circuit, it is of no consequence whether the communication is transmitted to the debtor or debtor's counsel.  *See Allen ex rel. Martin v. Lasalle Bank, NA*, 629 F.3d 364, 368 (3d Cir. 2011).  ("[i]f an otherwise improper communication would escape FDCPA liabilities simply because that communication was directed to a consumer's attorney, it would undermine the deterrent effect of strict liability."  This principle was recently reaffirmed by the Third Circuit in *Kaymark v. Bank of America, N.A.*, *et.al.* 783 F. 3d 168 (3d Cir. 2015), (Udren is a defendant).  In that case,

> Kaymark alleges that, by attempting to collect fees for legal services not yet performed in the mortgage foreclosure, Udren violated 15 U.S.C. §1692e – specifically 1692e(2)(A), (5) and (10) – which imposes strict liability on debt collectors who "use any false, deceptive or misleading representation or means in connection with the collection of any debt," and §1692f(1) by attempting to collect "an [] amount (including any interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."
> *Id.* at 174.

Udren argued among other things "that a complaint, *because* it is directed to the *court* is not a communication to the *consumer* subject to §§1692e and 1692f." *Id.* at 178.   The Third Circuit rejected that argument and held that a "communication" under the FDCPA, is "the

conveying of information regarding a debt directly *or indirectly* to any person through any medium" (emphasis in the original).  *Id.*   Thus, "because the Foreclosure Complaint was served on Kaymark (directly or indirectly through his attorney), he was ***the intended recipient of the communication***."   *Id.*   (emphasis added). The Court in *Kaymark* validated the "least sophisticated debtor" standard stating, "***[W]e analyze the communication giving rise to the FDCPA claim 'from the perspective of the least sophisticated debtor***."" (emphasis added) (internal citations omitted).  *Id.* at 174.   The Third Circuit later in its opinion reaffirmed the "least sophisticated debtor" standard by quoting its opinion in *McLaughlin v. Phalen, Hallinan & Schmieg, LLP*, 756 F.3d 240 (3d Cir. 2014),

> Nothing [in the Letter] says [the amount owed on the debt] is an estimate or in any way suggests that it was not a precise amount. As the drafter of the Letter, PHS is responsible for its content ***and for what the least sophisticated debtor would have understood from it*** …"
> (emphasis added) *Id.* at 175.

The *Kaymark* court stated, "The facts in *McLaughlin* are virtually indistinguishable from the case at bar, Here, the Foreclosure Complaint also plainly 'inform[ed] the reader of the specific amounts due for specific items as of a particular date,' *id.*, ***two months prior to the date the Foreclosure Complaint was filed***." (emphasis added). *Id.*

If this court were to adopt the "competent attorney" standard, it would eviscerate the Third Circuit's holding in *Allen ex rel. Martin v. Lasalle Bank, NA*, 629 F.3d 364, 368 (3d Cir. 2011), which held ("[i]f an otherwise improper communication would escape FDCPA liabilities simply because that communication was directed to a consumer's attorney, it would undermine the deterrent effect of strict liability," and would wholly repudiate *Kaymark*.

11

That the Reinstatement Notice(s) were faxed to a facsimile machine in counsel's office does not alter the fact that Ms. Beard was "***the intended recipient of the communication***." (App., Ex. F, Page 1). *Kaymark* at 178.

> ### 5. The Liability of Ocwen, Udren and Moore is Compelling under 15 U.S.C. §1692e(2)(A), (B), and (10).

In the Third Circuit, it has been held that "the FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation." *See Allen ex rel. Martin v. Lasalle Bank, NA*, 629 F.3d 364, 368 (3d Cir. 2011).

In *McLaughlin v. Phalen, Hallinan & Schmieg, LLP*, 756 F.3d 240 (3d Cir. 2014), the Phalen, Hallinan & Schmieg law firm ("PHS") sent the consumer a demand letter which included two line items: $650 in "Attorneys' Fees" and $550 for "Cost of Suit and Title Search." *McLaughlin* asserted that these fees and costs had not actually been incurred as of the date stated in the demand letter, constituting actionable misrepresentation. The Third Circuit in reversing the District Court's dismissal of the Complaint held as follows:

> Nothing [in the Letter] says [the amount owed on the debt] is an estimate or in any way suggests that it was not a precise amount. As the drafter of the Letter, PHS is responsible for its content and for what the least sophisticated debtor would have understood from it. If PHS wanted to convey that the amounts in the Letter were estimates, then it could have said so. It did not. Instead its language informs the reader of the specific amounts due for specific items as of a particular date…"

The facts in *Kaymark*, were virtually indistinguishable from McLaughlin, other than *Kaymark* involved a Foreclosure Complaint and *McLaughlin* involved a demand letter. In both cases the Third Circuit held that the estimating of attorney's fees and other expenses not yet incurred constitutes a violation of 1692e(2)(A) (B) and 1692e(10) .

12

Here, the Reinstatement Information Notice(s), "**REINSTATEMENT AMOUNT ANTICIPATED GOOD THROUGH 9/20/13**," is clearly a false representation as to the character, amount or legal status of the debt and a misrepresentation of the services rendered or compensation which may be lawfully received, in that at the time the communication was issued and through September 20, 2013, the additional attorney foreclosure fee of $1,105 was not permitted to be charged by Ocwen under the Pennsylvania Loan Interest and Protection Law, Act of January 30, 1974, P.L. 13, No. 6, as amended 41 P.S. §406, in that attorney fees are limited to $50 prior to the *commencement of the foreclosure* or other legal action.   The mortgage foreclosure action was not filed until January 9, 2014, four months later.   Similarly, none of the costs that were contained in said Reinstatement Information Notice had been incurred by Ocwen, Udren or Cathy Moore.   Additionally, the service of process cost of $400 is grossly exaggerated, in that the actual cost of service of process was $58.00. (Sheriff's Return, App., Ex. "I").

The Udren Defendants overstate the impact of the word "anticipated" in page 4 of the Reinstatement Information Notice(s).   The word "anticipated" is not differentiated in any fashion from surrounding verbiage, is not clear or conspicuous, and is not brought to Beard's attention, a least sophisticated debtor.   An equally availing interpretation is that the Reinstatement amount is only anticipated to be good through 9/20/13, and could be higher thereafter. [3]

There is nothing in the "communication" that highlights that these charges are "estimates" or that the Plaintiff may pay a lesser sum.   In fact, the opposite is stated, "The *enclosed payoff amount* must be in the form …" (emphasis added).   Similarly, the only other instruction of relevance states that "**PAYMENT MUST BE SENT TO OUR NEW JERSEY**

---

[3]      Even page 4 is inaccurate and contradicted by the instructions on page 2, which mandates that the payment must be received at least two days prior to September 20, 2013.   At best, the word "anticipated" on page 4 of the Reinstatement Information Notice(s) is confusing, or capable of multiple interpretations.

**OFFICE** and received by us no later than two days prior **to the "REINSTATEMENT AMOUNT ANTICIPATED GOOD THROUGH DATE"** indicated on the payoff form attached.  Thereafter the Reinstatement Amount may change and your check may be returned to you."  There is nothing contained in the instructions, that advise Ms. Beard that a lesser payment may be made prior to September 18, 2013, or that Ocwen, Udren or Moore would refund any such monies.

A "communication" is deemed deceptive and/or misleading if it can be reasonable read to have two or more different meanings, one of which is inaccurate.  *Rosenau v. Unifund Corp.*, 539 F.3d 218 (3d Cir. 2008).

Beard would submit that what Ocwen, Udren and Moore have done in this case is no different than that which was done in *Kaymark* or *McLaughlin*. A least sophisticated debtor could have interpreted these Reinstatement Notice(s) that he/she was obligated to pay $8,123.87 on or before September 18, 2013.  Had Ocwen, Udren and Moore wished to inform the least sophisticated debtor that the Reinstatement Information Notice(s) was purely an estimate, they could clearly have so designated the same. *See McLaughlin* and *Kaymark supra.*

What is noteworthy is that Udren and Moore are capable of issuing a Reinstatement or Payoff Information Notice wherein they provide estimates, rather than demanding specific amounts.  Such is the case cited by the Udren Defendants, *Stuart v. Udren Law Offices, P.C.*, 25 F. Supp.3d 504 (2014), wherein the term "anticipated" is the subject of an opinion by the Honorable Matthew W. Brann of this District.  Therein, Moore on March 16, 2012 [4] forwarded to Elaine Stuart a two-page Payoff Information Notice.  (App., Ex. "J").  On page 2, the charges of; (i) "Prothonotary – File Complaint"  (ii) "Sheriff – Serve Complaint" (iii)  "Prothonotary –

---

[4]  This communication occurred six (6) months prior to the "communication" at issue in this case.

Discontinue Action"  and (iv) "Attorney Fee of $965.00" over and above an Attorney Fee charge

of $50.00 are all marked "(Anticipated)."   **What is critical** is the "**NOTE**" at the bottom of the

page, highlighted and totally capitalized which states:

> 1.     **ANY ITEM MARKED "ANTICIPATED," IS NOT YET DUE, BUT MAY BECOME DUE DURING THE TIME PERIOD SET FORTH IN THIS STATEMENT. BEFORE SENDING IN FUNDS, PLEASE CALL US AT 215-568-9500 TO CONFIRM WHETHER THESE AMOUNTS HAVE BECOME DUE.   ATTORNEY FEES ARE SUBJECT TO ADJUSTMENT PURSUANT TO PENNSYLVANIA ACT 6, IF APPLICABLE.**

(emphasis in the original).

Clearly, Udren and Moore on behalf of Ocwen knew how to inform a least sophisticated

debtor that certain charges are not yet due and payable.   As the drafter of the Reinstatement

Notice(s), Udren and Moore are "responsible for its content" and for what the "least

sophisticated debtor would have understood from it." *See, McLaughlin* and *Kaymark*.   In this

case, they ***failed*** to provide these instructions.

> 6.     **The Liability of Ocwen, Udren and Moore is Compelling under 15 U.S.C. §1692f(1).**

The Third Circuit in *Kaymark*, 783 F. 3d 168, 175 in a virtually identical case - "specific

amounts due for legal services not yet performed in a mortgage foreclosure, i.e. two months prior

to the foreclosure date" – held

> By extension, it follows that *Kaymark* has sufficiently alleged that Udren's attempt to collect those misrepresented fees was not "expressly authorized by the mortgage contract or permitted by law. *§ 1692f(1)*. To be sure, *Kaymark* expressly agreed to the collection of certain fee categories, such as, "attorneys' fees, property inspections and valuation fees." But the contract also specified that BOA could only charge for "services *performed* in connection with" the default and collect 'all expenses *incurred*" in pursuing authorized remedies. (emphases added). While such

15

language is arguably capable of more than one meaning, we must view the Foreclosure Complaint through the lens of the ***least sophisticated consumer***…"
(emphasis added) (internal citations omitted).

Similarly, in this case, the Mortgage (App. Ex. "K") at Paragraph 14 states, "***Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law***." (emphasis added). Paragraph 22 of the document permits acceleration, foreclosure and sale of the property and provides, "***Lender shall be entitled to collect all expenses <u>incurred</u> in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence <u>to the extent permitted by Applicable Law</u>***." (emphasis added). As in *Kaymark*, only expenses ***actually*** incurred are permitted by the Mortgage. As in Kaymark, demanding attorney fees for a foreclosure that did not happen for four more months violates 15 U.S.C. §1692f(1).

Furthermore, the Pennsylvania Loan Interest and Protection Law, Act of January 30, 1974, P.L. 13, No. 6 as amended, 41 P.S. §406, provides in pertinent part as follows:

> Attorney's Fees Payable. – With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:
> . . .
> (3)   Prior to commencement of foreclosure or other legal action, attorneys' fees which are reasonable and actually incurred **not in excess of fifty dollars ($50)** … (emphasis added).

Clearly, (i) an attorney foreclosure fee of $1,105, (ii) a Complaint filing cost of $162, (iii) an exaggerated service of process cost of $400, (iv) a discontinue action cost of $13, and (v) a overnight charges/wire cost of $25 none of which have been incurred, are not authorized either by the Mortgage or by "Applicable Law." Thus, Ocwen was not entitled to collect these amounts and the Udren Defendants are likewise not authorized to collect these amounts.

16

## V.    CONCLUSION

For all of foregoing, Udren and Moore are not entitled to Summary Judgment.

Respectfully submitted,


Date:  July 2, 2015                          *s/Bernard S. Rubb*_____

Bernard S. Rubb, Esquire

Pa. I.D. #22109

Bernard S. Rubb & Associates

434 Oliver Road

Sewickley, PA 15143

(412) 741-3021

(412) 741-3011 (fax)

bernierubb@aol.com

17

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAYNIE L. BEARD,                    )
                                    )      Civil Action No: 1:14-CV-01162
            Plaintiff,              )
                                    )      Honorable William W. Caldwell
      vs.                           )
                                    )      Electronically Filed
OCWEN LOAN SERVICING, LLC, UDREN    )
LAW OFFICES, PC and CATHY MOORE,    )      **JURY TRIAL DEMANDED**
                                    )
            Defendants.             )

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.8(b)(2)

The undersigned hereby certifies that the Plaintiff's Brief in Opposition to Motion of Defendants Udren Law Offices, PC and Cathy Moore for Summary Judgment contains 4,916 words, exclusive of the Table of Contents, the Table of Authorities and this Certification and thus complies with the 5,000 word limitation contained in Local Rule 7.8(b)(2).  I am relying on the word count feature of the Word-Processing System used to prepare this Brief.


                                    *s/Bernard S. Rubb*_____
                                    Bernard S. Rubb, Esquire