UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JAYNIE L. BEARD, :
    Plaintiff :
     :
    v. : CIVIL NO. 1:14-CV-1162
     :
OCWEN LOAN SERVICING, LLC, :
UDREN LAW OFFICES, P.C., and :
CATHY MOORE, :
    Defendants :

*M E M O R A N D U M*

*I.    Introduction*

We are considering three motions for summary judgment. This matter relates to a two-count complaint in which Plaintiff Jaynie L. Beard alleges that Defendants violated various sections of the Fair Debt Collection Practices Act (FDCPA). (Doc. 1). On June 1, 2015, Defendants moved for summary judgment. Cathy Moore and Udren Law Offices filed a joint motion, while Ocwen Loan Servicing filed separately. (Doc. 30; Doc. 32). The following day Plaintiff filed a cross motion, asking that we grant her summary judgment as to liability. (Doc. 34). For the reasons discussed below, we will deny Defendants' motions, and we will grant Plaintiff's motion.

*II.    Background*

Plaintiff owns real property located at 3515 Schoolhouse Lane, Harrisburg, Pennsylvania. (Doc. 30-2 at 1; Doc. 32 at 1; Doc. 34-2 at 1). She purchased the property with a loan from Columbia National, Inc. (Doc. 30-8). In connection with the loan, Plaintiff

executed a promissory note and a mortgage. (Id. at 3). Relevant to this case, paragraph fourteen of the mortgage states that the "Lender may charge Borrower fees for services performed in connection with Borrower's default . . . including, but not limited to, attorneys' fees . . . ." (Id. at 12). Paragraph fourteen goes on to limit this authority, however, by stating, "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." (Id.).

In 2010, Plaintiff defaulted on the promissory note. (Doc. 32 at 5; Doc. 44-2 at 3). At the time, her mortgage was serviced by American Home Mortgage Servicing, Inc. (Id.). To avoid continued default, Plaintiff and American entered into a loan modification agreement. (Id.). In 2012, Plaintiff defaulted on the modified agreement. (Id.). At the time of the second default, Homeward Residential, Inc. was the servicer of the mortgage. (Id.). Homeward offered to enter into a second loan modification agreement with Plaintiff on the condition that she completed a trial payment plan. (Doc. 30-2 at 11; Doc. 45-2 at 3). Plaintiff commenced the trial plan, after which Defendant Ocwen Loan Servicing became the servicer of Plaintiff's mortgage. (Doc. 32 at 5; Doc. 44-2 at 3-4). Upon successful completion of the plan, Ocwen offered her a second loan modification agreement. (Id.). Finding the terms unpalatable, Plaintiff declined the second agreement and retained counsel. (Doc. 32 at 6; Doc. 44-2 at 4).

In late August or early September 2013, Plaintiff contacted Ocwen and requested a reinstatement quote – the amount necessary to bring her note out of default. (Id.). She requested that Ocwen fax the quote to her attorney, Bernard Rubb. (Id.). Ocwen provided its foreclosure counsel, Defendant Udren Law Offices, with the reinstatement figures. (Id.). Defendant Cathy Moore, a legal assistant at Udren, prepared

2

the reinstatement quote. (Doc. 30-2 at 4; Doc. 45-2 at 4-5). On September 11, 2013, as requested by Plaintiff, Moore faxed the quote to Rubb's office. (Id.). The fax coversheet and reinstatement quote were addressed to Plaintiff. (Doc. 37-4).

The reinstatement quote contained three pages. (Id.). The first page read as follows:

> Dear Sir or Madame:
>
> As requested, enclosed please find our reinstatement form indicating the sum needed to reinstate the referenced loan.
>
> Please note the following:
>
> 1. **PAYMENT MUST BE SENT TO OUR NEW JERSEY OFFICE** and received by us no later than Two (2) days **prior** to the "Reinstatement Amount Anticipated Good Through Date" indicated on the payoff form attached. Thereafter, the Reinstatement amount may change and your check may be returned to you.
> 2. The enclosed payoff amount must be in the form of **Cashier's Check, Certified Check, Cash or Money Order payable to UDREN LAW OFFICES, P.C.** Any other form of payment **will be returned** to you.
>
> . . . .

(Id. at 2). On the second page, under the heading "REINSTATEMENT AMOUNT GOOD THROUGH September 9, 2013," was an itemized list of payments and charges that Plaintiff owed as of September 9, 2013. (Id. at 3). On the last page, the quote stated the following:

REINSTATEMENT AMOUNT ANTICIPATED GOOD
THROUGH 9/20/2013

| | | |
|---|---|---|
| Amount Due as of | 9/09/13 | $6,418.87 |
| Clerk of Court – Complaint Filing Cost | | $162.00 |
| Service of Process Cost | | $400.00 |
| Clerk of Court – Discontinue Action Cost | | $13.00 |

3

|  |  |
|---|---|
| Overnight Charges/Wire Cost | $25.00 |
| Attorney Foreclosure Fee | $1,105.00 |
| Grand Total | $8,123.00 |

(Id. at 4). At the time Moore faxed the reinstatement quote, Udren had not actually incurred the fees or costs listed on the last page. (Doc. 34-2 at 4; Doc. 42-2 at 2-3).

On June 17, 2014, Plaintiff filed her complaint, alleging that Defendants' inclusion of fees and costs on the last page of the reinstatement quote violated 15 U.S.C. §§ 1692e(2)(A)-(B), (10), and 1692f(1). (Doc. 1). In their respective motions for summary judgment, each party asserts that they are entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 30; Doc. 32; Doc. 34).

III.     *Discussion*

*A. Standard of Review*

Pursuant to Federal Rule of Civil Procedure 56, summary judgment will only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party.'" Roth v. Norfalco, 651 F.3d 367, 373 (3d Cir. 2011) (quoting Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011)). In determining whether a genuine issue of material fact exists, we "must view all evidence and draw all inferences in the light most favorable to the non-moving party." Lawrence, 527 F.3d at 310. With this standard in mind, we turn to the merits of the motions.

4

*B. Ocwen's Threshold Arguments*

To avoid any potential liability, Ocwen makes two threshold arguments. First, it argues that it cannot be held liable under the FDCPA because it is not a "debt collector." (Doc. 35 at 7-9). Second, it argues that it cannot be held vicariously liable for the acts of Udren and Moore. (Doc. 35 at 16-17). Although made separately, these two arguments collapse into one. Pursuant to Third Circuit precedent, if a defendant and the defendant's attorney are both "debt collectors," the defendant can be held vicariously liable for the acts of the attorney. Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 404-05 (3d Cir. 2000). Because Udren admits it is a debt collector (Doc. 34-2 at 1; Doc. 42-2 at 1), both of Ocwen's arguments present a single issue: whether Ocwen is considered a debt collector.

The FDCPA only governs the actions of "debt collectors." Pollice, 225 F.3d at 403. Creditors, mortgagors, and mortgage servicing companies, like Ocwen, are generally not debt collectors and are therefore statutorily exempt. Id. at 403; Scott v. Wells Fargo Home Mortg., Inc., 326 F. Supp. 2d 709, 718 (E.D. Va. 2003). If, however, an ordinarily-exempt entity acquires a debt obligation by assignment after the debt was already in default, the entity "may be deemed a debt collector."[1] Pollice, 225 F.3d at 403.

---

1. Ocwen argues that not only does the obligation have to be acquired by assignment after it was already in default, but it must be obtained for the sole purpose of collecting the debt. It relies on the FDCPA's definition of creditor: "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he received an assignment or transfer of a debt in default solely for the purpose of facilitating collection . . . for another." 15 U.S.C. § 1692a(4) (emphasis added). Thus, according to Ocwen, only when the entity acquires a defaulted debt solely for collection purposes can it be excluded from the definition of creditor and classified as a debt collector. We disagree. The FDCPA defines "debt collector" as: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed . . . another. § 1692a(6) (emphasis added). Reconciling these two definitions, the Third Circuit has held that an entity is a debt collector if (1) it is assigned a defaulted debt, and (2) its principal business purpose is the collection of debts, or it regularly

The same is not true if the entity assumed the obligation due to a merger. When an entity assumes the debt obligation by way of a merger, courts hold that the debt was not "acquired" after the default. Sprague v. Neil, No. 1:05-CV-1605, 2007 WL 3085604 at * 3 (M.D. Pa. Oct. 19, 2007). The courts reason that in a merger, as opposed to an assignment, a successor corporation stands in the shoes of the disappearing corporation in every aspect and assumes all the debts and liabilities of the disappearing corporation as if it incurred those liabilities itself. Id. Thus, the successor corporation actually "acquired" the debt before default. Here, the parties agree that Ocwen started servicing Plaintiff's mortgage after she defaulted. They only dispute whether Ocwen acquired the mortgage via an assignment or assumed it through a merger.

Ocwen argues that it assumed Plaintiff's mortgage as the result of a merger. According to Ocwen, after Plaintiff defaulted, her mortgage servicer, American Home Mortgage, changed its name to Homeward Residential, Inc. (Doc. 35 at 6). Thereafter, Homeward's parent company merged with a subsidiary of Ocwen, resulting in Ocwen assuming thousands of mortgages in Homeward's portfolio, including Plaintiff's. (Id.). To support this argument, Ocwen provides one source of evidence – an affidavit from one of its employees. (Doc. 32-2).

Conversely, Plaintiff argues that Ocwen obtained her mortgage by assignment. (Doc. 44 at 11). She claims that American Home Mortgage assigned her mortgage to Homeward, and Homeward assigned the mortgage to Ocwen. (Id.). To support her arguments, Plaintiff points to two sources of evidence. First, she provides a copy of a verified foreclosure complaint that Ocwen filed against her in the Pennsylvania

---

engages in debt collection. See Pollice, 225 F.3d at 403; Oppong v. First Union Mortg. Corp., 215 F. App'x 114 (3d Cir. 2007).

6

Court of Common Pleas of Dauphin County. (Doc. 44-5 at 8). In the very first paragraph, Ocwen is given the choice to identify itself as the current mortgagee of record, the legal holder of the mortgage by virtue of being successor in interest to the current mortgagee of record, or the legal holder of the mortgage by virtue of assignment of the mortgage. (Id.). Given this option, Ocwen identifies itself as legal holder by assignment. (Id.). The complaint states that American Home Mortgage assigned the mortgage to Homeward on March 12, 2003, and Homeward assigned it to Ocwen on December 4, 2013. (Id.). Plaintiff's second source of evidentiary support is a copy of a mortgage assignment recorded with the Dauphin County Recorder of Deeds. It, too, states that Homeward assigned the mortgage to Ocwen. (Doc. 44-6 at 1). Plaintiff argues that Ocwen's single affidavit cannot overcome this evidence.

Not only do we agree with Plaintiff that the affidavit does not justify summary judgment in Ocwen's favor, but we also find that the affidavit is insufficient to create an issue for trial. The Third Circuit has held that conclusory, self-serving affidavits are insufficient to create a genuine issue of fact. Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009). "[T]he affiant must ordinarily set forth facts, rather than opinions or conclusion. An affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant or non-movant's burden." Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002) (indicating that affidavit was insufficient to create genuine issue because it was conclusory and unsupported by documentary evidence).

Here, Ocwen provides a single affidavit from a senior loan analyst. (Doc. 32-2). The affiant merely declares that American changed its name to Homeward, and Homeward subsequently merged with Ocwen. (Id.). He gives no indication as to how he

7

knows this self-serving conclusion to be true, and he provides no specific facts or documentary evidence to support it. As a party to the purported merger, Ocwen should easily be able to produce documents establishing that a merger was consummated. It did not. Instead, the only documentary evidence is that which Plaintiff produced: publicly recorded documents showing that Ocwen, when given the choice between merger and assignment, chose to identify itself as the legal holder of Plaintiff's mortgage by virtue of <u>assignment</u>. Accordingly, we find that no reasonable juror could conclude that Ocwen assumed Plaintiff's mortgage by way of merger.

Because Ocwen acquired Plaintiff's defaulted mortgage by assignment, Ocwen is a "debt collector" subject to the provisions of the FDCPA, and it can be held vicariously liable for the actions of Udren.

*C. Plaintiff's § 1692e Claims.*

Plaintiff first alleges that Defendants violated 15 U.S.C. § 1692e(2) and (10). Those sections provide as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (2) The false representation of –
>   (A) the character, amount, or legal status of any debt; or
>   (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer.
> . . . .

8

15 U.S.C. § 1692e(2)(A)-(B), (10).  According to Plaintiff, by including unincurred fees and costs in the reinstatement quote, Defendants made false representations of the amount of the debt and the services rendered, violations of § 1692e(2)(A) and (B), and used a false representation to collect a debt in violation of § 1692e(10).

When determining if a communication violates the proscriptions of § 1692e, courts view the communication from the perspective of the least sophisticated consumer. Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006).  The least sophisticated consumer standard is a low standard, intended "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." Id. at 453 (internal quotation marks omitted).  Although a low standard, it "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Wilson v. Quadramed Corp., 225 F.3d 350, 354-55 (3d Cir. 2000).  "Even the least sophisticated debtor is bound to read collection notices in their entirety." Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 299 (3d Cir. 2008).  The least sophisticated consumer standard is also an objective standard, "meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be." Jensen v. Pressler & Pressler, 791 F.3d 413, 419 (3d Cir. 2015).

Defendants assert that they are entitled to summary judgment on Plaintiff's § 1692e claims because the reinstatement quote was not false, misleading, or deceptive. To support this position they first argue that we should change the perspective from which we view the quote.  According to Defendants, since the quote was faxed to Plaintiff's counsel, and was never sent directly to Plaintiff, we should apply a "competent attorney

standard." (Doc. 31 at 14; Doc. 35 at 12). They claim that the least sophisticated consumer standard is inappropriate because "lawyers who represent consumers in debt collection cases are familiar with debt collection law and therefore unlikely to be deceived." (Id.) (citing Simon v. FIA Card Servs. N.A., No. 12-518, 2015 WL 1969411 (D.N.J. April 30, 2015); Fratz v. Goldman & Warshaw, P.C., No. 11-CV-02577, 2012 WL 4931469 at *3 (E.D. Pa. Oct. 16, 2012)).

We find that the least sophisticated consumer standard is the appropriate standard in this case. Recently, the Third Circuit held that when a consumer is the intended recipient of a conveyance of information, such a conveyance is a "communication to a consumer," even if the communication was transmitted through the consumer's attorney. Kaymark v. Bank of Am., 783 F.3d 168 (3d Cir. 2015); see also Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364 (3d Cir. 2011). Because such a conveyance is a "communication to a consumer," it must be analyzed using the standard applicable to consumers. See, e.g., Kaymark, 783 F.3d at 174-75 (using the least sophisticated consumer standard to analyze foreclosure complaint consumer received through her attorney). That is, if the consumer is the intended recipient of a communication sent by a debt collector, we must apply the least sophisticated consumer standard, even if the debt collector sent the communication to the consumer through the consumer's attorney. Id.

Here, Plaintiff was undoubtedly the intended recipient of the reinstatement quote. First, Plaintiff contacted Ocwen directly and requested the quote. (Doc. 37-4). Second, in response to her specific request, the quote was faxed to her attorney's office. (Doc. 30-2 at 3; Doc. 32 at 6). Third, the fax coversheet was addressed to Plaintiff. (Doc. 37-4). Fourth, the reinstatement quote itself was addressed to Plaintiff. (Id.). And fifth, no

document was addressed to Plaintiff's counsel or anyone else. (Id.). Plaintiff's counsel simply served as the medium through which the quote was conveyed to Plaintiff. Kaymark, 783 F.3d at 174-75.

Because Plaintiff was the intended recipient of the reinstatement quote, the quote was a "communication to a consumer," requiring that we apply the least sophisticated consumer standard.[2] Id.

In their second argument, Defendants assert that the reinstatement quote was not false, misleading, or deceptive, even when viewed from the perspective of the least sophisticated consumer. They argue that the least sophisticated consumer, had he fulfilled his obligation to read the quote in its entirety, would have understood that the fees had not yet been incurred. (Doc. 31 at 12-14; Doc. 35 at 10-12). Defendants claim this is so because the fees were clearly and conspicuously delineated as "anticipated." (Id.). In support, they cite our opinion in Stuart v. Udren Law Offices P.C., wherein we held that a payoff statement was not misleading since unincurred fees were marked as "anticipated." Stuart v. Udren Law Offices P.C., 25 F. Supp. 3d 504 (M.D. Pa. 2014) (Brann, J.). Conversely, in Plaintiff's motion for summary judgment, she argues that despite the use of the word "anticipated," the least sophisticated consumer would understand that the fees had already been incurred, and therefore the quote was false, misleading, and deceptive.

---

2. Assuming that the competent attorney standard is ever to be applied, we find that it would be appropriate only when the attorney was the ultimate and sole intended recipient, not simply an intermediary through which the communication was conveyed to her client. See, e.g., Fratz, 2012 WL 4931469 at * 1 (indicating that the communication in question was a credit card user agreement that was sent by the defendant's attorney to the plaintiff's attorney as part of a disclosure of evidence that defendant's counsel intended to admit during an arbitration hearing). Although this court has previously applied the competent attorney standard, see Villegas v. Weinstein & Riley, P.S., 723 F. Supp. 2d 755 (M.D. Pa. 2010) (Conaboy, J.), the Third Circuit's subsequent holdings in Kaymark and Allen render that application obsolete.

We agree with Plaintiff that the least sophisticated consumer would read the reinstatement quote as saying that the fees had already been incurred.[3] Contrary to Defendants' argument, their use of the word anticipated simply does not put the least sophisticated consumer on notice that the fees were estimates. Our rationale is twofold.

First, "anticipated" appears only one time on the page where the fees are listed, and that single instance is buried in a difficult-to-decipher heading – "REINSTATMENT AMOUNT ANTICIPATED GOOD THROUGH 9/20/2013." This use of "anticipated" is quite distinguishable from the use in Stuart. In Stuart, the word anticipated was written in parentheses next to each and every unincurred fee – six times in total. (Doc. 44-13 at 2). Additionally, the payoff statement included an explanatory paragraph, advising the consumer that "any item marked 'anticipated' is not yet due, but may become due during the time period set forth . . . ." (Id.). Because "anticipated" appears once in Plaintiff's reinstatement quote, and that appearance is in a heading that is difficult to comprehend, we find that unlike in Stuart, Defendants' use of "anticipated" falls far short of being clear and conspicuous to the reader.

Second, as the parties point out, to determine what the least sophisticated consumer would understand, the communication in question must be read and viewed in its entirety. See Campuzano-Burgos, 550 F.3d at 299. Here, when the reinstatement quote is read as a whole, it is clear to us that Defendants' one use of "anticipated" speaks to the date that payment was due, not the amount of the fees. On page one, the quote refers to the heading at issue. It tells Plaintiff that "**PAYMENT MUST BE SENT** . . . and

---

3. Whether a communication is false or misleading under the FDCPA is a question of law. Lesher v. Law Office of Mitchell N. Kay, P.C., 724 F. Supp. 2d 503, 506 (M.D. Pa. 2010). Because none of the parties argue that there is a genuine issue of material fact concerning the contents of the reinstatement quote, the issue of whether the quote violates § 1692e is properly resolved on summary judgment. Id.

received by us no later than Two (2) days **prior** to the 'REINSTATEMENT AMOUNT ANTICIPATED GOOD THROUGH DATE' indicated on the payoff form attached. Thereafter, the Reinstatement amount may change and your check may be returned to you." (Doc. 37-4 at 2). By referring to the entire heading in quotation marks to identify the date that payment was due, Defendants indicate to the reader that the heading, as a whole, relates to the due date. Because the heading speaks to the due date, the reader would understand the reinstatement quote as saying that the amounts of the listed fees were exact, but those amounts were only anticipated to be accurate until September 20, 2013.[4]

        In addition to the first paragraph on page one, we find three other sources of support for this interpretation. The first two sources also appear on page one. The very first line of page one tells Plaintiff that enclosed in the quote is a "reinstatement form indicating <u>the sum needed</u> to reinstate the referenced loan." (Id.) (emphasis added). Likewise, in paragraph two, Defendants instruct Plaintiff that "<u>[t]he enclosed payoff amount</u> must be in the form of [check or money order]." (Id.) (emphasis added). With this use of language, Defendants speak of the payoff amount in no uncertain terms and indicate that the amount listed has already been incurred and is due. The final source of support is Defendants' own moving papers. In arguing the impact of their use of the word "anticipated," Defendants make the following self-defeating argument: "anticipated amounts include items that *conceivably* could be incurred by the <u>anticipated good through</u>

---

4. Defendants also argue that the least sophisticated consumer would know the fees were unincurred because they appear on a separate page than those already incurred. We think not. Having two separate pages of fees is consistent with two different due dates. The second page was the specific amount that was due before September 9, 2013. Thereafter, the fees went up. Those increased fees were listed on the third page, and it was anticipated that amount was valid up to September 20, 2013, after which the fees would increase again.

13

due date . . . ." (Doc. 46 at 6; Doc. 30-2 at 5) (second emphasis added). Without realizing it, Defendants themselves attach "anticipated" to the due date. If Defendants interpret their own reinstatement quote as attaching "anticipated" to the due date, it is implausible to expect the least sophisticated consumer to attach it to the amount of the fees.

Because Defendants' use of the word anticipated is not clear and conspicuous, and because it refers to the due date, not the amount of the fees, we find that the least sophisticated consumer would read the reinstatement quote as saying the fees were already incurred.[5] Since the fees had in fact not been incurred, this was a false representation of the amount of the debt in violation of § 1692e(2)(A). It was a false representation of the services rendered in violation of § 1692e(2)(B). And, it was the use of a deceptive means to collect a debt in violation of § 1692e(10). Accordingly, we will grant Plaintiff's motion for summary judgment on her § 1692e claims.

*D. Plaintiff's § 1692f(1) Claim*

In Plaintiff's second claim, she asserts that Defendants violated § 1692f(1). It states the following:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal

---

5. Even if the consumer would understand that the fees and charges were anticipated, we would likely find that the reinstatement quote was false. The whole purpose of the reinstatement quote, as we understand it, is to allow the debtor to become current on her payments and prevent the filing of a foreclosure complaint. Thus, pursuant to the deadline in Plaintiff's reinstatement quote, Defendants gave Plaintiff eight days to make her payment and avoid the filing of a foreclosure complaint. As such, it is unclear to us how Defendants could have anticipated incurring expenses for filing the foreclosure complaint, service of process, and overnight wire charges in that same eight day period.

14

>obligation) unless such amount is expressly authorized by
>the agreement creating the debt or permitted by law.
>. . . .

15 U.S.C. § 1692f(1). Plaintiff asserts that pursuant to paragraph fourteen of the mortgage, Defendants were only expressly authorized to collect fees that were (1) actually incurred and (2) permitted by applicable law. Therefore, according to Plaintiff, Defendants violated § 1692f(1) because the fees in the reinstatement quote were unincurred and the attorneys' fees were prohibited under Pennsylvania law.

In their motions for summary judgment, Defendants do not dispute that the fees in the reinstatement quote had not yet been incurred. (Doc. 34-2 at 4; Doc. 42-2 at 3-4). Nor do they dispute that the collection of unincurred fees was not expressly authorized by the mortgage agreement. (Doc. 30-8 at 12) (stating that "Lender may charge Borrower fees for services performed"). Rather, as they did with Plaintiff's § 1692e claims, Defendants rely on their use of the word anticipated. Although Defendants do not frame the argument this way, as we read their briefs, they argue that because the fees were delineated as anticipated, there was no attempt to collect fees that had not been incurred. (Doc. 31 at 9-12; Doc. 35 at 14-16).

As our discussion above reveals, however, the reinstatement quote did not delineate the fees as "anticipated" and did not put the least sophisticated consumer on notice that the fees were unincurred.[6] Thus, by including the fees in the reinstatement

---

6. Defendants argue that "'the only inquiry under § 1692f(1) is whether the amount collected was expressly authorized by the agreement creating the debt or permitted by law' and does not involve the sophistication of the consumer." (Doc. 31 at 10) (quoting Allen, 629 F.3d at 368). We find that this rule has been superseded by the Third Circuit's recent opinion in Kaymark. In Kaymark, the court did in fact apply the least sophisticated consumer standard in the context of § 1692f(1). Kaymark, 783 F.3d at 175 (applying standard to determine if unincurred fees were permitted by mortgage). The least sophisticated consumer standard is used to determine what the defendant

15

quote, Defendants did attempt to collect fees that had not been incurred – fees not expressly authorized by the mortgage agreement. (Doc. 30-8 at 12). Therefore, we find that Defendants violated § 1692f(1).[7] See Kaymark, 783 F.3d at 175 (indicating attempt to collect unincurred fees when mortgage only allowed fees for services actually performed was a basis for a § 1692f(1) claim). Accordingly, we will grant Plaintiff summary judgment.

IV.     *Conclusion*

For the reasons addressed above, we will grant Plaintiff's motion for summary judgment as to liability. We will deny Defendants' motions. Because no evidence or briefing was submitted as to damages and attorneys' fees, this case will remain on the December 2015 trial list to resolve the issue of damages. We will issue an appropriate order.

---

was attempting to collect. Only then can it be determined whether that expense was expressly authorized by the agreement.

7. Because we find that Defendants attempted to collect unincurred fees, we need not examine whether their attempt to collect $1,105 of attorneys' fees was permitted by Pennsylvania law. We note, however, that the Superior Court of Pennsylvania has ruled that the state law Plaintiff invokes – 41 PA. STAT. ANN. § 406 – does not apply to debt collectors. Glover v. Udren Law Offices, P.C., 92 A.3d 24 (Pa. Super. Ct. 2014). Although we find Plaintiff's arguments persuasive, and although the Supreme Court of Pennsylvania has granted a petition for allowance of appeal to address the issue, see 3 WAP 2015, "[a]n intermediate state court in declaring and applying state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what state law is, should be followed by a federal court in deciding a state question." Fid. Union Trust Co. v. Field, 311 U.S. 169, 178 (1940).