UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JAYNIE L. BEARD, :
Plaintiff :
:
v. : CIVIL NO. 1:14-CV-1162
:
OCWEN LOAN SERVICING, LLC, :
UDREN LAW OFFICES, P.C., and :
CATHY MOORE, :
Defendants :

*M E M O R A N D U M*

## *I. Introduction*

We are considering two motions for reconsideration. (Doc. 55; Doc. 56). This case relates to a complaint in which Plaintiff alleges that Defendants violated various sections of the Fair Debt Collection Practices Act (FDCPA). Specifically, Plaintiff alleges that Defendants' inclusion of unincurred fees and costs in a reinstatement quote violated 15 U.S.C. §§ 1692e(2)(A)-(B), (10), and 1692f(1). (Doc. 1). In June of 2015, the parties filed cross motions for summary judgment. (Doc. 30; Doc. 32; Doc. 34). We granted Plaintiff's motion and denied Defendants'. (Doc. 50; Doc. 51). Defendants now seek reconsideration of our memorandum and order. (Doc. 55; Doc. 56). For the reasons discussed below, we will deny Defendants' motions for reconsideration.

*II. Discussion*[1]

*A. Standard of Review*

"A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002). Nor can it be used to raise new arguments or supporting facts that could have been previously raised, but were not. McDowell Oil Serv., Inc. v. Interstate Fire & Cas. Co., 817 F. Supp. 538, 541 (M.D. Pa. 1993). Rather, a party seeking reconsideration must demonstrate: (1) an intervening change in the controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice. Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). Here, Defendants make numerous arguments that our grant of summary judgment in favor of Plaintiff was clear error of law. We address each argument in turn and find none with merit.

*B. Whether Ocwen Loan Servicing is a Debt Collector*

In its motion for summary judgment, Ocwen argued that it was not liable for violations of the FDCPA because it was not a debt collector. The FDCPA applies only to debt collectors; mortgage servicing companies, like Ocwen, are generally exempt. Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000). Under prevailing law, however, if an ordinarily-exempt entity acquires a debt obligation after the debt was in default, the entity may be deemed a debt collector. Id. For this rule to apply, the entity must have acquired the defaulted debt by assignment, not merger. Id.

1. Because our prior memorandum provides a detailed recitation of the facts and procedural history, we need not repeat them here. See (Doc. 50 at 1-4).

Although it admitted to acquiring Plaintiff's debt after it was in default, Ocwen claimed that it was not a debt collector because it acquired Plaintiff's debt via merger. It supported its argument with a single affidavit from a current employee, which simply stated that Ocwen acquired the debt by way of merger. (Doc. 32-2). Conversely, Plaintiff argued that Ocwen acquired the debt by assignment. She provided publicly-recorded documents – a verified foreclosure complaint and a mortgage assignment – in which Ocwen indicated that it acquired the debt by assignment. (Doc. 44-5 at 8; Doc. 44-6 at 1). Finding that (1) Ocwen's conclusory, self-serving affidavit was insufficient to carry its burden as either the movant or non-movant, (2) that Ocwen failed to produce any merger documents, and (3) that publicly-recorded documents clearly showed that Ocwen self-identified its interest as acquired by assignment, we held that Ocwen acquired the debt by assignment and was therefore a debt collector. (Doc. 50 at 8).

Ocwen argues that this holding was clear error. (Doc. 61 at 2-6). Recognizing that the publicly-recorded documents show assignment, Ocwen asserts that a merger and an assignment are not mutually exclusive. (Id.). That is, Ocwen argues that it merged with the company that previously serviced Plaintiff's debt and that company subsequently assigned the debt to Ocwen. (Id.). Further, it argues that the affidavit submitted by its employee was not conclusory because it identified the parties, dates, and effect of the merger. (Id.). Because evidence of assignment did not necessarily foreclose the existence of a merger, and because the affidavit was sufficient, Ocwen argues that it established acquisition by merger.

Ocwen's first argument is a new one. In its briefs on summary judgment, Ocwen argued extensively that it acquired Plaintiff's debt by no other means than by

merger. See (Doc. 35 at 6-7) ("Accordingly, subsequent to the merger with Homeward, Ocwen simply assumed the servicing of Plaintiff's loan . . . . By operation of law, Ocwen did not acquire the servicing rights by post-default transfer or assignment so as to be a 'debt collector' subject to the FDCPA). Now, for the first time, it argues that the acquisition was by both merger and assignment. Because it was not made on summary judgment, we need not examine the argument here, as there is nothing for us to reconsider. Ogden, 226 F. Supp. 2d at 606.

With respect to the affidavit, when stripped to its essentials, it states that Ocwen acquired Plaintiff's debt from the previous mortgage servicing company via merger on December 27, 2012. Contrary to Ocwen's continued insistence otherwise, this is merely a self-serving conclusion, which, under Third Circuit precedent, is insufficient to carry Ocwen's burden as movant or non-movant. See Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002) (finding an affidavit that set forth the plaintiff's assets, monthly income, debt, and monthly bills was insufficient to show that she was unable to pay an arbitrators fee because it was conclusory and unsupported by documentary evidence); Nationwide Mut. Ins. Co. v. Roth, 252 F. App'x 505, 508 (3d Cir. 2007) (holding that a party cannot rely on self-serving affidavit in the face of overwhelming documentary record evidence). In light of the insufficiency of Ocwen's affidavit and the overwhelming documentary evidence to the contrary, we find no clear error in holding that Ocwen acquired Plaintiff's debt by assignment and is therefore a debt collector.

*C. Applicability of the Least Sophisticated Consumer Standard*

It is well established that courts view a communication from the perspective of the least sophisticated consumer when determining whether the communication is false

or misleading in violation of § 1692e. Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006). It is a low, objective standard, meant "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." Id. In their respective motions for summary judgment, Defendants argued that the application of the least sophisticated consumer standard was inappropriate in this case. (Doc. 31 at 14; Doc. 35 at 12). Focusing on the fact that the reinstatement quote in question was faxed only to Plaintiff's counsel, Defendants urged us to apply a "competent attorney" standard. (Id.). In support of their position, Defendants cited opinions from other district courts, namely Simon v. FIA Card Services, N.A., No. 12-518, 2015 WL 1969411 (D.N.J. April 30, 2015) and Fratz v. Goldman & Warshaw, P.C., No. 11-CV-02577, 2012 WL 4931469 (E.D. Pa. Oct. 16, 2012).

We declined Defendants' invitation to cast aside the well-establish standard. In holding that the least sophisticated consumer standard does apply in this case, we relied on two Third Circuit opinions. First, in Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364 (3d Cir. 2011), the Third Circuit confronted the question of whether a communication from a debt collector to a consumer's attorney is covered under § 1692f(1). Id. at 366. It held that "[a] communication to a consumer's attorney is undoubtedly an indirect communication to the consumer" covered under the FDCPA. Id. at 368. Similarly, in Kaymark v. Bank of America, N.A., 783 F.3d 168 (3d Cir. 2015), the Third Circuit was faced with the question of whether a foreclosure complaint was a communication that fell within the scope of FDPCA. In finding that it was, the Third Circuit held that when a consumer is the intended recipient of a conveyance of information, such conveyance is a "communication to a consumer," even if the information is transmitted

through the consumer's attorney. Id. at 178. The Kaymark court went on to analyze the foreclosure complaint from the perspective of the least sophisticated consumer. Id. at 174-76.

Guided by Kaymark and Allen, we examined whether Plaintiff was the intended recipient of the reinstatement quote sent by Defendants. We found she was because: (1) Plaintiff contacted Ocwen directly and requested the quote; (2) in response to Plaintiff's specific request, the quote was faxed to her attorney; (3) the fax coversheet was addressed to Plaintiff; (4) the quote itself was addressed to Plaintiff; and (5) no document was addressed to counsel. (Doc. 50 at 10-11). Since Plaintiff was the intended recipient, we held that, pursuant to Kaymark and Allen, the reinstatement quote was a "communication to a consumer." (Id.). Moreover, we held that as a communication to a consumer, the quote must be analyzed using the standard applicable to consumers. (Id.).

In a series of arguments, Defendants allege that the application of the well-establish standard was clear error. First, they attack our reliance on Kaymark and Allen. (Doc. 57 at 4-5; Doc. 61 at 6). They assert that Kaymark addressed whether a foreclosure complaint was covered by the FDCPA, not whether the competent attorney standard is appropriate. (Doc. 57 at 4). Moreover, they argue that Allen involved a claim under § 1692f(1), which the Allen court suggested requires no inquiry into the sophistication of the consumer. (Doc. 57 at 5). Second, they point us to the cases they want us to follow – namely, Fratz. (Doc. 61 at 6). Defendants argue that Fratz instructs us that the competent attorney standard can be applied to communications to consumers. (Doc. 61 at 6-7). If the least sophisticated consumer standard applies simply because a consumer is the intended recipient of the communication, Defendants argue that debt collectors

could be liable even if the communication never reaches the consumer. (Doc. 61 at 7). They claim this unacceptably expands Kaymark and Allen and "overrules" Fratz. (Id.).

We start our analysis of these arguments by pointing out that Defendants have not directed us to any Third Circuit opinions, or any post-Allen or post-Kaymark opinions of this court, suggesting that the competent attorney standard is the correct one. As such, we are perplexed at how the use of the standard that has historically been applied could amount to clear error. Further, Defendants' arguments suffer from three fatal flaws. First, Kaymark and Allen are binding precedent.[2] Although they address questions different than that posed in this case, we are bound by their holding that when a consumer is the intended recipient of a conveyance of information, it is a communication to a consumer, even if the communication is transmitted through the consumer's attorney. From there, it requires no great leap to apply the least sophisticated consumer standard to a communication to a consumer, especially in light of the fact that the Third Circuit applied it in Kaymark. Thus, our holding does not expand Kaymark and Allen. Second, Fratz and Simon are not binding. Unlike the precedential opinions of the Third Circuit, we are not bound by the decisions of our sister courts to the east, and our holding in no way "overrules" them. Third, the facts of Fratz are quite distinguishable from those *sub judice*. In Fratz, the communication at issue was a contract sent to the plaintiff's counsel as part of a disclosure of evidence that defendant's counsel intended to introduce at an arbitration hearing. Fratz, 2012 WL 4931469 at *1. In our previous opinion, we cited Fratz as an

---

2. Following the issuance of the Third Circuit's opinion in Kaymark, Udren Law Offices filed a Petition for Writ of Certiorari with the Supreme Court of the United States. See Udren Law Offices, P.C. v. Kaymark, No. 15-216. Because of our reliance on Kaymark, Defendants urge us to stay the motion for reconsideration while the Supreme Court considers the petition. This issue has been rendered moot, as the Court denied the petition on January 11, 2016. Id.

example of when the competent attorney standard may be appropriate – since the plaintiff's counsel was the sole and ultimate intended recipient. (Doc. 50 at 11 n.2). Accordingly, we find no clear error with our application of the least sophisticated consumer standard.[3]

*D. The Use of "Anticipated" in the Reinstatement Quote*

At the summary judgment stage, Defendants argued that the reinstatement quote did not violate the FDCPA, even when viewed from the perspective of the least sophisticated consumer. The last page of the reinstatement quote stated the following:

REINSTATEMENT AMOUNT ANTICIPATED GOOD THROUGH 9/20/2013

| | | |
|---|---|---|
| Amount Due as of | 9/09/13 | $6,418.87 |
| Clerk of Court – Complaint Filing Cost | | $162.00 |
| Service of Process Cost | | $400.00 |
| Clerk of Court – Discontinue Action Cost | | $13.00 |
| Overnight Charges/Wire Cost | | $25.00 |
| Attorney Foreclosure Fee | | $1,105.00 |
| Grand Total | | $8,123.00 |

(Doc. 37-4 at 4). Defendants claimed that their use of the word "anticipated" made it clear that the fees listed had not yet been incurred. Thus, the quote was not misleading.

We disagreed with Defendants and held that the least sophisticated consumer would read the reinstatement quote as saying the fees were already incurred. (Doc. 50 at 12). Our rationale was twofold. First, we found that the single instance of

3. Defendants' briefs include additional arguments in favor of the competent attorney standard. (Doc. 57 at 5-8). Because these arguments are the same as those raised on summary judgment and merely emphasize Defendants' disagreement with the court rather than attempt to show clear error, we need not address them. Ogden, 226 F. Supp. 2d at 606. Defendants also raise, for the first time, an alternative argument. They claim that the FDCPA does not apply in this case because the reinstatement quote was the product of a consumer-initiated communication. (Doc. 57 at 8-12). It was incumbent upon Defendants to raise this argument on summary judgment. They did not. Therefore, Defendants cannot raise it for the first time now. McDowell Oil Serv., Inc., 817 F. Supp. at 541.

"anticipated" was not clear and conspicuous, rather it was buried in a difficult-to-decipher heading. (Id.). Second, we found that when the reinstatement quote was read as a whole, it was clear that Defendants' one use of "anticipated" spoke to the latest date payment could be accepted, not the amount of the fees. (Id. at 12-14). Thus, we held that the least sophisticated consumer "would understand the reinstatement quote as saying that the amounts of the listed fees were exact, but those amounts were only anticipated to be accurate until September 20, 2013." (Id. at 13).

In their motions for reconsideration, Defendants take exception to our interpretation of "anticipated." First, Defendants argue that "anticipated" referred to the amount in the reinstatement quote because it is "general knowledge" that the foreclosure process is fluid, causing the charges and fees to constantly change overtime. (Doc. 57 at 12). Thus, the least sophisticated consumer should have known that "anticipated" referred to all the fees listed below it. Second, they argue that it was grammatically acceptable for the adjective "anticipated" to follow the noun it describes, that being "Reinstatement Amount" and not the date. (Id. at 12-13). Third, Defendants argue that it is illogical for "anticipated" to refer to the due date because the date of September 20, 2013 was fixed in time and certain to occur. (Id. at 13). Finally, they argue that the least sophisticated consumer would have known the fees were unincurred because Plaintiff had not been served with the foreclosure complaint. (Doc. 61 at 8-10).

Each argument is without merit. First, the least sophisticated consumer does not have "general knowledge" of the foreclosure process and would not know that fees fluctuate throughout the process. Therefore, the least sophisticated consumer could not draw from that general knowledge in order to attach "anticipated" to the amount of the

fees listed in the reinstatement quote. Next, Defendants' grammar argument is contradicted by judicial opinions and leading secondary authorities. "Under normal rules of grammar, and absent a compelling reason, an adjective modifies a noun close to it, usually following the adjective." Andrulis Pharm. Corp. v. Celgene Corp., No. 13-C-1644, 2015 WL 3978578 at *6 (D. Del. June 26, 2015); see also The Chicago Manual of Style 168 (2003) ("An adjective that modifies a noun or noun phrase usually precedes it."). Thus, applying the normal rules of grammar, as we would expect the least sophisticated consumer to do, the adjective "anticipated" attaches to the noun phrase "good through 9/20/2013," not "reinstatement amount." Third, Defendants misread our prior opinion as saying the date, itself, was anticipated. We held that the least sophisticated consumer would read the quote as saying that the amount was fixed and that amount was anticipated to be accurate until September 20, 2013. Thus, it was not the date of September 20, 3013 that we found to be anticipated, but the length of time the quote would remain accurate and valid.

Finally, we are unconvinced by Defendants' argument that the least sophisticated consumer would have known that the fees were unincurred merely because Plaintiff had not been served with a foreclosure complaint. The only fee listed in the reinstatement quote implicating the actual service of the complaint is the "service of process cost." It does not necessarily follow from a lack of service that the other fees – filing fees, discontinuation fees, overnight charges, and attorneys' fees – had not already been incurred. From this single fee, Defendants want the consumer to read the "service of process cost" language in the reinstatement quote, associate that with the physical receipt of a foreclosure complaint, and then infer from a lack of physical receipt that all fees listed

in the quote must be anticipated. This simply expects too much of the least sophisticated consumer.

Accordingly, we find no clear error in holding that “anticipated” did not put the least sophisticated consumer on notice that the fees had not yet been incurred.

*E. Whether Defendants Violated both § 1692e and § 1692f(1)*

Section 1692f provides that a “debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.” 15 U.S.C. § 1692f. Without limiting the general application of this language, § 1692f enumerates eight specific practices that are violations. Id. The only section relevant here is § 1692f(1). It states that it is a violation of § 1692f to collect “any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.” § 1692f(1). Plaintiff claims that Defendants’ attempt to collect unincurred fees violated § 1692f(1) because unincurred fees were not expressly authorized by the mortgage. On summary judgment, we granted Plaintiff summary judgment on her § 1692f(1) claim in addition to her § 1692e claims.

Defendants argue that this was clear error of law because the same factual basis cannot support both § 1692e claims and § 1692f claims. (Doc. 61 at 10). Citing opinions from other district courts, Defendants assert that a claim “under § 1692f will be deemed deficient if it does not identify any misconduct beyond that which Plaintiff already asserted in other provisions of the FDCPA.” (Id.) Because Plaintiff’s § 1692f(1) claim is based on the same allegations that support her § 1692e claims, Defendants argue that Plaintiff’s § 1692f(1) claim must fail. (Id.)

When traced to the seminal case of Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006), Defendants' argument falls apart. In Foti, the court instructed as follows:

> Section 1692f generally prohibits a debt collector from employing 'unfair or unconscionable means to collect' a debt. Eight subsections list certain practices that violate that section, however, conduct that may be deemed unfair or unconscionable is not limited to the acts enumerated in subsections (1) through (8). Instead, § 1692f allows the court to sanction improper conduct that the FDCPA fails to address specifically.

Id. Applying this understanding of § 1692f, the Foti court held that the plaintiff's claim under the general language of § 1692f was deficient because it did not identify any misconduct beyond that which the plaintiff asserted were violations of other provisions of the FDCPA. Id.

Thus, the general language of § 1692f provides a catchall for abusive debt collection practices not specifically delineated as unlawful elsewhere in the FDCPA. Id. A claim fits appropriately in either a specific section of the FDCPA or the catchall language of § 1692f. If a specific section applies, the catchall does not. Therefore, it is claims asserted pursuant to the general catchall provision that require a plaintiff to identify conduct beyond that already asserted in other provisions of the FDCPA. Id. Here, Plaintiff's claim is not pursuant to the general catchall, but rather a specific subsection – § 1692f(1). Defendants' application of this rule to Plaintiff's claim is too broad. Accordingly, we find no clear error in granting Plaintiff summary judgment on both her § 1692e claims and her § 1692f(1) claim.

*III. Conclusion*

For the reasons discussed above, we will deny Defendants' motions for reconsideration. We will issue an appropriate order.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge