UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JAYNIE L. BEARD,
    Plaintiff

v.      CIVIL NO. 1:14-CV-1162

OCWEN LOAN SERVICING, LLC,
UDREN LAW OFFICES, P.C., and
CATHY MOORE,
    Defendants

*M E M O R A N D U M*

*I.*      *Introduction*

This matter relates to a two-count complaint (Doc. 1) in which Plaintiff Jaynie L. Beard alleges that Defendants violated various sections of the Fair Debt Collection Practices Act (FDCPA). Currently before the court is a second motion (Doc. 137) for reconsideration filed by defendant Ocwen Loan Servicing, LLC ("Ocwen") on October 12, 2017. In that motion, Ocwen requests that we reconsider our September 24, 2015 order (Doc. 51), in which we granted partial summary judgment in favor of Plaintiff, as well as our January 28, 2016 order (Doc. 72), in which we denied Ocwen's first motion for reconsideration. For the reasons that follow, we will deny Ocwen's second motion for reconsideration.

*II.     Background*

We previously summarized the facts giving rise to the instant action as follows:

> Plaintiff owns real property located at 3515 Schoolhouse Lane, Harrisburg, Pennsylvania. She purchased the property with a loan from Columbia National, Inc. In connection with the loan, Plaintiff executed a promissory note and a mortgage. Relevant to this case, paragraph fourteen of the mortgage states that the "Lender may charge Borrower fees for the services performed in connection with Borrower's default . . . including, but not limited to, attorneys' fees . . . ." Paragraph fourteen goes on to limit this authority, however, by stating, "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law."
>
> In 2010, Plaintiff defaulted on this promissory note. At the time, her mortgage was serviced by American Home Mortgaging Servicing, Inc. To avoid continued default, Plaintiff and American entered into a loan modification agreement. In 2012, Plaintiff defaulted on the modified agreement. At the time of the second default, Homeward Residential, Inc. was the servicer of the mortgage. Homeward offered to enter into a second loan modification agreement with Plaintiff on the condition that she completed a trial payment plan. Plaintiff commenced the trial plan, after which Defendant Ocwen Loan Servicing became the servicer of Plaintiff's mortgage. Upon successful completion of the plan, Ocwen offered her a second loan modification agreement. Finding the terms unpalatable, Plaintiff declined the second agreement and retained counsel.
>
> In late August or early September 2013, Plaintiff contacted Ocwen and requested a reinstatement quote – the amount necessary to bring her note out of default. She requested that Ocwen fax the quote to her attorney, Bernard Rubb. Ocwen provided its foreclosure counsel, Defendant Udren Law Offices, with the reinstatement figures. Defendant Cathy Moore, a legal assistant at Udren, prepared the reinstatement quote. On September 11, 2013, as requested by Plaintiff, Moore faxed the quote to Rubb's office. The fax coversheet and reinstatement quote were addressed to Plaintiff.

(Doc. 50 at 1-3).

2

The aforementioned reinstatement quote contained three pages. The first page explained to Plaintiff the various methods she could use to make her payment to reinstate the loan and provided where she should send such payment. (Doc. 37-4 at 2). The second page contained a heading which read, "REINSTATEMENT AMOUNT GOOD THROUGH September 9, 2013." (Id. at 3). Under that heading was an itemized list of payments and charges that Plaintiff owed by September 9, 2013. (Id.) The third and final page of the reinstatement quote read as follows:

REINSTATEMENT AMOUNT ANTICIPATED GOOD
THROUGH 9/20/2013

| | |
|---|---|
| Amount Due as of 9/09/13 | $6,418.87 |
| Clerk of Court – Complaint Filing Cost | $162.00 |
| Service of Process Cost | $400.00 |
| Clerk of Court – Discontinue Action Cost | $13.00 |
| Overnight Charges/Wire Cost | $25.00 |
| Attorney Foreclosure Fee | $1,105.00 |
| Grand Total | $8,123.00 |

(Id. at 4). It is undisputed that at the time Moore faxed the reinstatement quote, Udren had not yet incurred the fees listed on the last page. (See Doc. 34-2 at 4; Doc. 42-2 at 2-3).

On June 17, 2014, Plaintiff filed her complaint (Doc. 1), alleging that the inclusion of unincurred fees and costs on the last page of the reinstatement quote violated various provisions of the FDCPA, including 15 U.S.C. §§ 1692e(2)(A)-(B), (10),[1] and

---

[1] 15 U.S.C. §§ 1692e(2)(A)-(B) and (10) provide as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
>   (2) The false representation of –
>     (A) the character, amount, or legal status of any debt; or

3

1692f(1).[2] The complaint names Ocwen, Udren, and Moore as defendants. The FDCPA claims against Udren and Moore are based on their alleged attempts to "collect attorneys' fees and costs that they knew had not been incurred and knew to be inflated." (Doc. 1 at 11). The FDCPA claims against Ocwen appear to be based upon a theory of vicarious liability, as Plaintiff claims that Udren and Moore, in attempting to collect the unincrred fees and costs, were acting "on behalf of Ocwen Loan Services, LLC." (Id. at 8).

On June 1, 2015, Moore and Udren filed a joint motion (Doc. 30) for summary judgment, and on the same day, Ocwen filed its own motion (Doc. 32) for summary judgment. Of particular relevance, in support of its motion for summary judgment, Ocwen argued that it was not a "debt collector" and, therefore, could not be held liable under the FDCPA which only governs the actions of "debt collectors." Moreover, Ocwen argued that it could not be held vicariously liable for the acts of Udren and Moore. On June 2, 2015, Plaintiff filed a cross motion (Doc. 34) for partial summary judgment, requesting that we grant her summary judgment against all Defendants on the issue of liability.

---

        (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
. . .
(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer.
. . . .

[2] 15 U.S.C. § 1692f(1) states as follows:

    A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
    (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
. . . .

On September 24, 2015, we issued a memorandum (Doc. 50) and order (Doc. 51), denying Defendants' motions for summary judgment and granting Plaintiff's cross motion for summary judgment on the issue of liability.[3] Notably, we rejected Ocwen's argument that its status as a servicing company removed it from the purview of the FDCPA. While we recognized that mortgage servicing companies, such as Ocwen, are often not considered debt collectors under the FDCPA, we also noted that based on Third Circuit precedent, a servicing company will be deemed a debt collector if it acquired a debt obligation by assignment after the debt was already in default. (Doc. 50 at 5 (citing Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 404-05 (3d Cir. 2000)). We found that all of the documentary evidence of record established that Ocwen assumed Plaintiff's already-defaulted mortgage (hereinafter "the Beard mortgage") by virtue of assignment, and that no reasonable juror could conclude otherwise. (Id. at 7-8). Thus, we concluded that Ocwen should be considered a debt collector and, therefore, could be held vicariously liable for the actions of Udren.[4]

On October 23, 2015, all Defendants moved for reconsideration of our September 24, 2015 order granting partial summary judgment to Plaintiff. (See Docs. 55 & 56). On January 28, 2016, we issued a memorandum (Doc. 71) and order (Doc. 72), denying those motions for reconsideration.

On October 12, 2017, Ocwen filed a second motion (Doc. 137) for reconsideration. In the instant motion, Ocwen again requests that we reconsider our

---

[3] While we granted summary judgment to Plaintiff on the issue of liability, we reserved the issue of damages for trial. A trial on damages is still pending.

[4] Udren, the law firm representing Ocwen, admits that it is a debt collector. (Doc. 34-2 at 1; Doc 42-2 at 1). Pursuant to Third Circuit precedent, if a defendant and the defendant's attorney are both debt collectors, the defendant can be held vicariously liable for the acts of its attorney. Pollice, 225 F.3d at 404-05.

5

September 24, 2015 order granting partial summary judgment to Plaintiff, and also that we reconsider our January 28, 2016 order denying Ocwen's first motion for reconsideration. Invoking the United States Supreme Court's recent decision in Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718 (2017), Ocwen suggests that it no longer can be considered a debt collector subject to FDCPA liability, and, therefore, requests that we enter an order granting summary judgment in its favor. Plaintiff opposes Ocwen's second motion for reconsideration. Multiple briefs have been filed in support of the parties' respective positions, and Ocwen's second motion for reconsideration is now ripe for our disposition.

*III.*     *Discussion*

    A. Standard of Review – Motion for Reconsideration

The purpose of a motion for reconsideration is to "correct manifest errors of law or to present newly discovered evidence." Max's Seafood Café *ex rel.* Lou Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). A proper motion for reconsideration "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (citation omitted). In the instant matter, Ocwen relies upon the first of these grounds, alleging that the Supreme Court's recent decision in Henson amounts to an intervening change in controlling law that calls for reconsideration of our decision to grant summary judgment to Plaintiff on the issue of liability.

### B. Is Ocwen Still a "Debt Collector" for Purposes of the FDCPA?

#### *1. The FDCPA's Definitions of "Debt Collector"*

"The FDCPA creates two 'mutually exclusive' categories, debt collectors and creditors, but only debt collectors are regulated by the statute." Bank of N.Y. Mellon Trust Co. N.A. v. Henderson, 862 F.3d 29, 34 (D.C. Cir. 2017) (citation omitted). The FDCPA defines the term "debt collector" in two ways: (1) any person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). On the other hand, the FDCPA defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). Generally, a loan servicer is not considered a "debt collector" under the FDCPA "unless the debt was in default when it was obtained by the servicer." McAndrew v. Deutsche Bank Nat'l Trust Co., 977 F. Supp. 2d 440, 448 (M.D. Pa. 2013) (citing 15 U.S.C. § 1692a(6)(F)).

#### *2. The Supreme Court's Decision in Henson*

In Henson, the case upon which Ocwen primarily relies in support of its second motion for reconsideration, CitiFinancial Auto had lent money to petitioners to buy cars, and petitioners had defaulted on those loans. 137 S. Ct. at 1720. Santander then purchased the defaulted loans from CitiFinancial, and sought to collect on the loans in ways that allegedly violated the FDCPA. Id. at 1720-21. Focusing on the second definition of "debt collector" contained within Section 1692a(6), the district court and the Fourth Circuit both held that Santander did not qualify as a debt collector because it did

7

not regularly seek to collect debts "owed . . . *another*," but rather sought only to collect for itself debts that it had purchased and owned. Id. at 1721 (emphasis added). The Fourth Circuit, however, acknowledged that some other circuit courts had reached a seemingly opposite conclusion on that issue,[5] and, therefore, the Supreme Court granted certiorari to address the circuit split. Id.

In delivering its opinion, the Supreme Court explained from the outset how the parties were in agreement that there are some entities which generally constitute debt collectors, while there are others that generally do not. Specifically, the Court stated as follows:

> Both sides accept that third party debt collection agents generally qualify as "debt collectors" under the relevant statutory language, while those who seek only to collect for themselves loans they originated generally do not. These results follow, the parties tell us, because debt collection agents seek to collect debts "owed . . . another," while loan originators acting on their own account aim only to collect debts owed to themselves.

Id. Having set that framework, the Court went on to explain that the narrow issue presented before it was whether "individuals and entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account" fall within the FDCPA's second definition of "debt collector." Id. The unanimous Court agreed with the Fourth Circuit's reasoning and held that Santander, as an entity that sought to collect debts that it had purchased and owned, could not be considered a debt collector under the FDCPA to the extent Section 1692a(6) defines a debt collector as one "who

---

[5] See, e.g., McKinney v. Cadleway Props., Inc., 548 F.3d 496, 502 (7th Cir. 2008) ("[A]n agency in the business of acquiring and collecting on defaulted debts originated by another is a debt collector under the FDCPA even though it actually may be collecting for itself."), *abrogated by* Henson, 137 S. Ct. 1718; F.T.C. v. Check Investors, Inc., 502 F.3d 159, 174 (3d Cir. 2007) (holding that an entity that purchased defaulted loans for the mere purpose of collecting on them amounted to a debt collector rather than a creditor), *abrogated by* Henson, 137 S. Ct. 1718.

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[6] Id. at 1721-22. Focusing on that particular definition of debt collector, the Court wrote as follows:

> [W]e find it hard to disagree with the Fourth Circuit's interpretive handiwork. After all, the [FDCPA] defines debt collectors to include those who regularly seek to collect debts "owed . . . another." And by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself. Neither does this language appear to suggest that we should care about how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a later purchase. All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for "another." And given that, it would seem a debt purchaser like Santander may indeed collect debts for its own account without triggering the statutory definition in dispute, just as the Fourth Circuit explained.

Id. (second alteration in original).

Prior to the Henson decision, it had been held that "for debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall in either category [creditor or debt collector]." See, e.g., Schlosser, 323 F.3d at 536. The Third Circuit held that when such a situation occurs, a court should look to the status of the debt when it was acquired to determine whether the defendant was acting as a "creditor" or "debt collector" under the FDCPA, and that "one attempting to collect a debt is a 'debt collector' under the FDCPA if the debt in question was in default when acquired." Check Investors, 502 F.3d at 173. Courts, however, have recognized that Henson abrogated the proposition that an entity attempting

---

[6] The Henson court recognized that Section 1692a(6) provides an additional statutory definition for the term "debt collector"—specifically, that which "encompasses those engaged 'in any business the principal purpose of which is the collection of any debts.'" 137 S. Ct. at 1721 (quoting 15 U.S.C. § 1692a(6)). The parties, however, had not much litigated that particular definition of "debt collector," and the Supreme Court declined to address it. Id.

9

to collect for itself a debt that it owned can be considered a debt collector merely because it acquired the loan after it was already defaulted. See, e.g., Bank of N.Y. Mellon, 862 F.3d at 34 ("[t]hat the debt was already in default when the [entity] purchased it did not make the [entity] a debt collector.") (citing Henson, 137 S. Ct. at 1723-24); Niborg v. CitiMortgage, Inc., No. C17-5155 BHS, 2017 WL 3017633, at *2 (W.D. Wash. July 17, 2017) ("An entity that seeks to collect a debt for its own account is not a 'debt collector' under the FDCPA, even if it obtained the debt from the loan originator after it went into default.") (citing Bank of N.Y. Mellon, 862 F.3d at 34); Chernyakhovskaya v. Resurgent Capital Servs. L.P., No. 2:16-cv-1235, 2017 WL 3593115, at *8 (D.N.J. Aug. 18, 2017) ("The holding in Henson overturned in part [Check Investors], which held that the FDCPA applied to entities who were in the practice of purchasing debts and then seeking to collect said debts." (citing Henson, 137 S. Ct. at 1721)).

It has been emphasized, however, that the Henson holding only pertains to the second definition of "debt collector" under Section 1692a(6) of the FDCPA, and the Henson court did not address the first definition of "debt collector"—namely, that which defines "debt collector" as one who is in any business "the principal purpose of which is the collection of any debts." Schweer v. HOVG, LLC, No. 3:16-CV-01528, 2017 WL 2906504, at *5 (M.D. Pa. July 7, 2017). Consequently, if an entity still satisfies that first definition of "debt collector," the Henson case may not preclude FDCPA liability, even if it is attempting to collect a debt for itself. Id. (holding that since defendant's "principal purpose of business '[was] to buy defaulted debts and thereafter attempt to collect those debts," Henson did not shield that defendant from liability because defendant fell within

"the definition of a debt collector unaddressed by Henson," and "the status of the debt at the time of obtaining ownership [was] irrelevant.").

*3. Application of Henson to the Instant Matter*

With the foregoing legal backdrop in mind, the parties in this case vehemently disagree as to whether the Henson holding applies to shield Ocwen from liability. At the crux of this disagreement is a dispute over Ocwen's precise role in the events giving rise to the instant matter.

Ocwen argues that its role was that of the "holder" of the Beard mortgage and that, therefore, its role places it within the clear purview of the Henson holding. Plaintiff on the other hand, contends that at all relevant times, the Federal National Mortgage Association ("Fannie Mae") was the actual owner of the Beard mortgage, and Ocwen was merely a servicer for the mortgage attempting to perpetuate a third-party collection on behalf of Fannie Mae rather than for its own account. Consequently, Plaintiff argues that Ocwen's role in this matter does not place it within the narrow holding of Henson. Ocwen responds to those assertions by arguing that even if it was a servicer for Fannie Mae, case law provides that servicers "stand in the shoes of a creditor" and are considered to have an identical function to creditors under the FDCPA. Ocwen contends, therefore, that servicers impliedly fall within the purview of the Henson holding as well.

In applying Henson to the instant matter, it is important to emphasize the narrowness of the Supreme Court's holding in that case. Henson did not hold that all parties acquiring already-defaulted debts are exempt from liability for purposes of the FDCPA. Rather, it merely held that a party seeking to collect for *itself* on a debt that it had purchased and *owned* could never be considered a "debt collector" under Section

11

1692a(6)'s second definition of that term. Thus, pursuant to Henson, one seeking to collect for itself a debt that it owns cannot be a debt collector merely because the debt was already in default at the time of acquisition. Henson did not, however, foreclose the possibility that one who acquires some right to an already-defaulted debt and then attempts to collect it for *another* could be considered a debt collector under the FDCPA.

If Ocwen was indeed the owner of the Beard mortgage and was attempting to collect for itself on that debt, Ocwen would clearly fall within the purview of the Henson decision. And, consequently, it could not be considered a debt collector under the second definition set forth in Section 1692a(6) despite its acquisition of the Beard mortgage subsequent to its default. Unfortunately for Ocwen, it has failed to point to sufficient record evidence to establish that it ever was the actual owner of the Beard mortgage. Consequently, we find it most appropriate to conclude that Ocwen is not shielded from FDCPA liability by the narrow holding of the Henson case, which only contemplated debt *owners* attempting to collect on their own accounts.

Record evidence suggests that Ocwen was either a servicer or "holder" of the Beard mortgage, but none of that evidence establishes that Ocwen was an actual owner.[7] Ocwen's own representative, Katherine Ortwerth, testified at a deposition that

---

[7] With respect to mortgage notes, the difference between ownership and servicing rights can be described as follows:

> The servicing rights and beneficial ownership interest in a given mortgage note are legally distinct and can be and often are transferred separately. The ownership interest is originally held by the mortgage lender who loaned the money to purchase the property and can be sold by the lender thereafter. Servicing rights encompass the day-to-day administration of the loan and typically include the processing of loan payments, responding to borrower inquiries, keeping track of the principal and interest balance on the loan, managing the loan's escrow account, and initiating foreclosure actions. Servicing rights are initially

Ocwen was merely a servicer and that Fannie Mae was the actual owner of the Beard mortgage. (Doc. 42-10 at 5-6).

Additionally, no record evidence suggests that Homeward, Ocwen's predecessor in interest, had ownership rights with respect to the Beard mortgage. When Homeward transferred its rights to Ocwen, Plaintiff received a letter from Homeward explaining that "[e]ffective April 1, 2013, [Homeward] will transfer the *servicing* of this account to Ocwen Loan Servicing, LLC (Ocwen)." (Doc. 1-2 at 1) (emphasis added). Moreover, when the transfer from Homeward to Ocwen actually occurred, Plaintiff received a letter from one of Ocwen's "relationship managers" stating: "As you know, Homeward transferred the *servicing* of your account to Ocwen Loan Servicing, LLC. I am here to help ensure a smooth transition on your account." (Doc. 1-4 at 1) (emphasis added). Furthermore, Ms. Ortwerth suggested in her testimony that Homeward merely held servicing rights to the Beard mortgage before Homeward transferred said rights to Ocwen. (Doc. 42-10 at 6).

Ocwen argues that it was not just a servicer of the Beard mortgage, but was in fact the "holder" of the Beard mortgage. Ocwen cites to its January 2014 foreclosure complaint against Plaintiff, in which Ocwen identified itself as "legal holder" of the Beard mortgage by assignment. (Doc. 44-5 at 8). Moreover, Ocwen points out that when we granted Plaintiff's cross motion for summary judgment on September 24, 2015, we acknowledged Ocwen to be the holder of the Beard mortgage by assignment. (See Doc.

---

> assigned to an entity at the time the mortgage is originated and may be assigned to other entities thereafter.

Block v. Seneca Mortg. Servicing, 221 F. Supp. 3d 559, 566 n.1 (D.N.J. 2016).

50 at 8) (noting that "Ocwen, when given the choice between merger and assignment, chose to identify itself as the legal *holder* of Plaintiff's mortgage by virtue of assignment.") (emphasis added). While there is indeed evidence to suggest that Ocwen was a "holder" of the Beard mortgage, this evidence still fails to establish that Ocwen was an actual owner of the Beard mortgage.

Although the two terms are often conflated, the "holder" of a mortgage note is distinct from the "owner" of a mortgage note. Most recently, the Third Circuit examined the distinction between a mortgage "holder" and a mortgage "owner" in the decision of In re Merritt, 702 F. App'x 90 (3d Cir. 2017) (nonprecedential). In that case, the Third Circuit explained that the "holder" of a mortgage note is one who is in *possession* of the note and is qualified to enforce the note through foreclosure or other means. Id. at 93-94. The court explained, however, that unlike an "owner" of a note, the "holder" may not be entitled to the economic benefits from payments received thereon. Id. at 93; see also Miller v. Homecomings Fin., LLC, 881 F. Supp. 2d 825, 829 (S.D. Tex. 2012) (citing SMS Fin., LLC v. ABCO Homes, Inc., 167 F.3d 235, 239 (5th Cir. 1999)) ("The owner of a note need not be a holder, because the two issues are separate and distinct."); Dale A. Whitman & Drew Milner, *Foreclosing on Nothing: The Curious Problem of the Deed of Trust Foreclosure Without Entitlement to Enforce the Note*, 66 Ark. L. Rev. 21, 25 (2013) (explaining that ownership of a note "means the right to economic benefits of the note" and that while a party other than the owner may have rights to negotiate modifications with a borrower and to enforce the note, the owner is "the party to whom the proceeds of the loan will ultimately be paid.").

Thus, given that Ocwen is unable to establish that it was the owner of the Beard mortgage, we cannot conclude that Ocwen was attempting to collect on an account for *itself*. That is because Ocwen has not shown that it was entitled to keep the economic benefits of any debt it may have been attempting to collect from Plaintiff.

Accordingly, we find that Ocwen's position in this matter is materially different from Santander in <u>Henson</u>. Unlike <u>Henson</u>, in which Santander had clearly purchased and owned the debt which it sought to collect, Ocwen has not pointed to sufficient record evidence to establish that it is anything more than a servicer or "holder" of the Beard mortgage. Therefore, we decline to extend the narrow holding of <u>Henson</u> to the circumstances in this case.

*IV.     Conclusion*

Because we find that Ocwen is unable to establish that it was the actual owner of the Beard mortgage at any time relevant to this action, we conclude that the <u>Henson</u> holding does not operate to shield Ocwen from FDCPA liability in the instant matter. Accordingly, Ocwen's second motion for reconsideration will be denied. An appropriate order will follow.