## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAYNIE L. BEARD, | : | Civil No. 1:14-CV-01162 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| OCWEN LOAN SERVICES, LLC, | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is a motion for attorney's fees filed by Plaintiff Jaynie L.

Beard ("Beard") against Defendant Ocwen Loan Services, LLC ("Ocwen").  (Doc.

234.)  For the reasons that follow, the motion will be granted in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

This action was initiated by Beard filing a complaint against Ocwen, Udren

Law Offices, PC ("Udren"), and Cathy Moore ("Moore") (collectively,

"Defendants") on June 17, 2014, alleging two counts of violations of the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*  (Doc. 1.)

Defendants answered the complaint on August 18, 2014.  (Docs. 14, 15.)  In June

2015, motions for summary judgment were filed by all parties.  (Docs. 30, 32, 34.)

On September 24, 2015, the court denied Defendants' motions for summary

---

[1] Given the nearly ten-year history of this case, the court will only highlight the facts and procedural history relevant to this motion.

judgment, but granted Beard's motion for partial summary judgment, which resolved the issue of liability.  (Docs. 50, 51.)  Specifically, the court found Defendants liable on Beard's claims under the FDCPA and listed this matter for a jury trial on damages.  (Doc. 50.)

Defendants subsequently filed motions for reconsideration of the court's decision, which were denied on January 28, 2016.  (Docs. 71, 72.)  Then, on May 11, 2016, Defendants filed a joint motion to exclude Beard from presenting evidence at the damages trial regarding attorney's fees and costs incurred in defending the related state court mortgage foreclosure action, wherein Beard received the reinstatement notice that is the basis for her FDCPA claims.  (Docs. 93, 94.)  On August 15, 2016, the court denied Defendants' motion and again listed this case for trial.  (Docs. 104, 105.)  Thereafter, the parties filed a variety of motions that necessitated the continuance of trial including motions to take additional discovery, for sanctions, for a protective order, and for reconsideration. (Docs. 107, 120, 128, 137.)  Following the court's ruling on the motions, this matter was again listed for trial.

In the fall of 2018, Defendants had a change in counsel and, ultimately, on July 2, 2019, counsel for Udren and Moore moved to withdraw as counsel because Udren closed its business in August 2018, had a negative net worth, and was no longer in operation.  (Docs. 166, 167.)  The court granted counsel's motion on July

8, 2019.  (Doc. 169.)  On October 17, 2019, Ocwen moved to file crossclaims out of time against Udren and Moore for indemnity, contribution, and breach of contract.  (Docs. 171, 172.)  The court permitted Ocwen to file an amended answer and crossclaims on November 8, 2019.  (Doc. 175.)

On November 18, 2019, this matter was reassigned to the undersigned. Since that time, the court resolved a motion in limine involving damages evidence, set this case for trial on more than one occasion, and referred this matter for a settlement conference with a magistrate judge.  (*See* Docs. 178–213.)  On December 1, 2020, the Clerk of Court entered a default against Udren.  (Doc. 208.) On August 9, 2021, three weeks prior to a date-certain damages trial, the parties agreed to settle this litigation, but requested that the court retain jurisdiction to resolve Beard's anticipated motion for attorney's fees.  (Doc. 214.)  The court approved this stipulated settlement on August 10, 2021, set a deadline for Beard to file a motion for attorney's fees of November 5, 2021, and permitted Ocwen to file a motion for default judgment against Udren within thirty days of the court's resolution of Beard's motion.  (Doc. 215.)

On December 15, 2021, Beard requested an extension of time to file her motion for attorney's fees.  (Doc. 217.)  Based on the extreme lateness of the extension request and Beard's failure to establish good cause, the court denied the motion on December 16, 2021.  (Doc. 219.)  On December 28, 2021, Beard filed a

motion for reconsideration of the court's order, which the court granted on February 10, 2022, setting a new deadline of February 24, 2022, for Beard to file her motion for attorney's fees.[2]  (Doc. 228.)  Late yet again, Beard filed a motion for extension of time on February 28, 2022.  (Doc. 230.)  The court granted Beard's request, providing until March 7, 2022, to file her motion and specifically advising her that no further extensions would be granted.  (Doc. 233.)  On March 8, 2022, at 6:18 a.m., Beard filed her motion for attorney's fees and brief in support thereof.  (Docs. 234, 235.)

Based on the missed deadline and the language of the court's prior order, Ocwen requested that the court strike Beard's motion.  (Doc. 236.)  The court declined to strike the motion, but permitted Ocwen to make arguments regarding lateness in its opposition brief.  (Doc. 237.)  Ocwen timely filed a brief in opposition and Beard filed a reply.  (Docs. 238, 239.)  Ocwen subsequently requested leave to file a sur-reply, which the court granted, and a sur-reply was filed on May 11, 2022.  (Doc. 240, 241, 242, 243.)  Finally, Beard requested to file a sur-reply to Ocwen's sur-reply, which this court granted with instructions that no further briefing would be permitted on Beard's motion for attorney's fees.  (Doc.

_____

[2] In the meantime, Ocwen filed its motion for default judgment against Udren.  (Docs. 220, 222, 226.)  In granting Beard's motion for reconsideration, the court noted that resolution of Beard's forthcoming motion for attorney's fees could impact Ocwen's motion for default judgment.  (Doc. 228, p. 1 n.1.)  Thus, the court stated it would permit amendment or supplement of Ocwen's motion for default judgment depending on the resolution of Beard's motion for attorney's fees.  (*Id.*)

244, 245, 246.)  Beard's sur-reply was filed on June 2, 2022, making the motion ripe for disposition.  (Doc. 247.)

### STANDARD OF REVIEW

According to the Supreme Court, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  This method of calculating attorney's fees is frequently called the "lodestar" method.  *See Angino v. Transunion, LLC*, No. 17-0954, 2019 WL 8161110, at *2 (M.D. Pa. Nov. 25, 2019).  The lodestar method consists of a burden shifting framework in which "[t]he party seeking attorney's fees has the [initial] burden to prove that its request for attorney's fees is reasonable." *Rayna P. v. Campus Cmty. Sch.*, 390 F. Supp. 3d 556, 561 (D. Del. 2019).  "To meet its burden, the fee petitioner must submit evidence supporting the hours worked and rates claimed." *Id.* (citation and quotation marks omitted). Once the fee petitioner satisfies their burden, the presumption is that the lodestar is the reasonable fee.  *Id.*

At that point, the party seeking an adjustment to the requested amount has the burden of proving that an adjustment is necessary.  *Id.*  To do so, "the party opposing the fee award [must come forward with] affidavit[s] or [a] brief with sufficient specificity to give fee [petitioner]s notice [they are opposing] the

reasonableness of the requested fee." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). "In determining whether the number of hours claimed is reasonable, the court may divide the claimed hours according to the type of work performed." *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:02-CV-0134, 2014 WL 2860863, at *6 (M.D. Pa. June 23, 2014), *amended*, 2014 WL 2991813 (M.D. Pa. July 2, 2014), *aff'd*, 612 F. App'x 612 (Fed. Cir. 2015). Excessive, redundant, or otherwise unnecessary hours are unreasonable. *Rode*, 892 F.2d at 1183 (quoting *Hensley*, 461 U.S. at 433). Only when the party opposing a fee award has met this burden can a court consider whether to exercise its discretion and adjust the requested amount of fees. Therefore, where "the party opposing the fee award does not meet its burden, the court must award the attorneys' fees at the requested rate." *Red Roof Franchising LLC, Inc. v. AA Hosp. Northshore, LLC*, 937 F. Supp. 2d 537, 564 (D.N.J. 2013).

## DISCUSSION

At the outset, the court addresses Ocwen's argument that Beard's motion should be denied in its entirety based on the untimeliness of the motion. (Doc. 238, pp. 7–8 n. 1.) Beard vigorously contests this request, arguing that Federal Rule of Civil Procedure 6(b)(1)(B) and relevant case law permits granting extensions of time in cases of excusable neglect. (Doc. 239, pp. 6–7.) Although the court appreciates Ocwen's frustration with the numerous extensions of time

and eventual lateness of the motion for attorney's fees, the court will not deny Beard's motion based on untimeliness because wholesale denial is too harsh of a sanction for the six hour and 18-minute delay in filing the motion for attorney's fees.

Turning to the merits of the motion, Beard argues that: (1) she is a prevailing party; (2) the 418 hours expended are reasonable under the lodestar method; and (3) under the "forum-rate" rule, Attorney Bernard Rubb's rate of $450 per hour is reasonable and appropriate in this case.  (Doc. 235.)  Ultimately, Beard requests $188,100 in attorney's fees and $7,999 in litigation expenses for litigating this case.  (*Id.*)  Ocwen submits that Attorney Rubb's rate of $450 per hour is excessive and sets forth arguments disputing a variety of time entries.  (Doc. 238.)  However, Ocwen does not dispute that Beard is the prevailing party in this case, which the court agrees with as Beard was granted summary judgment in her favor on liability and a settlement agreement was reached as to damages.  (*See* Docs. 50, 51, 214.)  The court will address the remaining arguments in turn.

## A. Hourly Rate

Typically, "a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (citing *Blum v. Stenson*, 465 U.S. 866, 895 (1984)). In analyzing the "forum-rate" rule, district courts must "assess the experience and

skill of the prevailing party's attorneys and compare their rates to the rates

prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience, and reputation." *Id.* (quoting *Rode*, 892 F.2d at

1183). The prevailing party must establish that the hourly rate requested meets the

standard using "satisfactory evidence," in addition to the attorney's own

declaration. *Id.* (quoting *Washington v. Phila. Cnty. Ct. of Common Pleas*, 89 F.3d

1031, 1035 (3d Cir. 1996)). "Deviation from this rule should be permitted only

when the need for the special expertise of counsel from a distant district is shown

or when local counsel are unwilling to handle the case." *Pub. Int. Research Grp.*

*of N.J. v. Windall*, 51 F.3d 1179, 1186 (3d Cir. 1995) (citation omitted).

Beard submits that Attorney Rubb has been practicing for over forty-six

years with experience in defending residential mortgage foreclosures and consumer

protection law cases such as FDCPA actions. (Doc. 235, p. 7.) Because Attorney

Rubb's practice is in Pittsburgh, Pennsylvania, he primarily practices in the

Western District of Pennsylvania and state courts within the Commonwealth of

Pennsylvania. (*Id.* at 7–10.) While Beard acknowledges that fees are generally

calculated using "the prevailing market rates in the relevant community," Beard

submits that a deviation from the "forum-rate" rule is appropriate here. (*Id.* at 9–

10.) Beard argues that she needed the special expertise of Attorney Rubb from a

different district and that local counsel was unwilling to handle her case. (*Id.*)

In support of this argument, Beard attaches the affidavit of Lisa Mary-Frances Hopkins, Esquire, who practices in the Middle District of Pennsylvania. (*Id.*; Doc. 234-5.)  Therein, Attorney Hopkins attests that Beard contacted her in January 2013 trying to locate a mortgage foreclosure attorney in the Harrisburg area.  (Doc. 234-5, ¶ 2.)  Although Attorney Hopkins generally handled family law matters, she believed "that the conduct of the lender in Ms. Beard's mortgage collection action might have violated certain consumer protection laws" and tried to help Beard locate an attorney.  (*Id.* ¶ 3.)  Attorney Hopkins contacted approximately two dozen attorneys in the central Pennsylvania area but was unable to locate someone willing to represented Beard.  (*Id.* ¶¶ 4–5.)  Attorney Hopkins attests: "Most attorneys were unwilling to handle this matter on a contingent fee basis or on a deferred compensation basis.  Some attorneys were not willing to handle this matter on a fee shifting basis.  Some attorneys had experience in consumer protection but did not wish to handle the mortgage foreclosure."  (*Id.* ¶ 5.)  Ultimately, Attorney Hopkins was referred to Attorney Rubb, who had the proper expertise and was willing to take Beard's case.  (*Id.* ¶¶ 7–9.)

Beard also compares Attorney Rubb's representation in this case to that of other attorneys who received a $500 per hour rate in a Western District of Pennsylvania class action under the FDCPA.  (Doc. 235, pp. 11–12.)  She relies on a declaration of James Pietz, Esquire, like the attorneys did in the Western District

matter, to support Attorney Rubb's $450 per hour rate as a reasonable rate in the Pittsburgh market for someone with comparable skill and experience. (*Id.*; Doc. 234-6.) Lastly, Beard submits the declarations of retired Judge Timothy P. O'Reilly of the Court of Common Pleas of Allegheny County and Daniel Lee Haller, Esquire in support of Attorney Rubb's expertise in residential foreclosure law and consumer litigation. (Doc. 235, pp. 12–13; Docs. 234-7, 234-8.)

Conversely, Ocwen argues that Attorney Rubb's rate is excessive and the court should focus on the prevailing rates that have been approved in the Middle District of Pennsylvania, not larger urban legal markets. (Doc. 238, pp. 10–11.) Ocwen cites cases that have held rates of $300 and $325 are appropriate in FDCPA cases in the Middle District market. (*Id.*) As to the forum-rate rule, Ocwen submits that Beard's reliance on *Hyman v. Devlin*, 3:17-cv-89, 2019 WL 2271113 (W.D. Pa. May 28, 2019), to support an exception to the forum-rate rule is inappropriate because that case involved "a complex combination of secured-transactions law, constitutional law, consumer law, and trial advocacy." (Doc. 238, p. 12 (quoting *Hyman*, 2019 WL 2271113 at *10).)

Next, Ocwen submits that Attorney Hopkins never suggested that there were no local attorneys who were qualified to handle this case, rather, local attorneys "were unwilling to handle this matter on a contingent fee basis . . . on a deferred compensation basis, [or] . . . on a fee shifting basis." (*Id.* at 13.) This, according

10

to Ocwen, does not support the conclusion that there were no qualified attorneys in the Middle District, just that the available attorneys could not reach a compensation agreement with Beard.[3]  (*Id.*)  Additionally, Ocwen points out that the outreach by Attorney Hopkins occurred in January 2013 regarding the mortgage foreclosure action, but in her affidavit, Attorney Hopkins states that, at that time, she believed the "conduct of the lender . . . might have violated certain consumer protection laws."  (*Id.* at 14, n.3.)  In Ocwen's view, this is "dubious" because the "only letter" that formed the basis for this FDCPA action was sent on September 9, 2013.  (*Id.*)  Lastly, Ocwen argues that even accepting that Beard qualifies for an exception to the forum rate rule, Attorney Rubb's $450 per hour rate is excessive in the Western District of Pennsylvania as well.  (*Id.* at 14–15.)

In her reply, Beard submits that Ocwen cannot articulate a standard for what would be an appropriately complex case to qualify for the forum-rate exception. (Doc. 239, p. 7–8.)  Additionally, Beard argues that Ocwen confuses the "expertise" exception with the "unwillingness exception" because no attorney was willing to take this case based on any compensation agreement.  (*Id.* at 12–13.)

---

[3] Ocwen then provides "a survey of cases" from the Middle District from 2014 through March 22, 2022, to show that 540 complaints containing FDCPA claims were filed in this District, thus, "the suggestion that Plaintiff had no choice but to retain Mr. Rubb is inaccurate."  (Doc. 238, pp. 13–14; Doc. 238-1, pp. 3–102.)  Beard responds with an argument as to why this number of cases is not appropriate to consider, including that the court should only include cases from the Harrisburg vicinage of the Middle District.  (Doc. 239, pp. 9–12.)  The court will not address these arguments because the court does not find it critical to this issue before it.

Because both exceptions apply in Beard's view, any argument in this regard fails. (*Id.* at 13.)  Lastly, Beard argues that Attorney Rubb's rate of $450 is reasonable because the cases cited by Ocwen for rates in this District are more than ten years old, thus making those rates stale.[4]  (*Id.* at 13–15.)

Addressing whether an exception from the forum-rate rule applies in this case, the court finds that Beard has not met the burden for an exception to this rule. As to the need for special expertise from counsel from another district, the court acknowledges Attorney Rubb's significant expertise in mortgage foreclosure and FDCPA actions.  However, the action before this court is a plain FDCPA lawsuit. The court finds support for the simplicity of this lawsuit in that Beard's motion for partial summary judgment was granted as to liability.  The material facts of the case were undisputed and clear, leading to the court's determination of liability in Beard's favor.

Turning to whether local counsel was unwilling to handle this case, the court does not find it credible that Attorney Hopkins attempted to find counsel for both the mortgage foreclosure action and FDCPA action in January 2013 given that the letter giving rise to the FDCPA action was not mailed until September 2013.  If the case before this court was only the mortgage foreclosure action, the court would

---

[4] In their respective sur-reply briefs, the parties continue to battle regarding whether the forum rate rule exception applies in this case.  (Docs. 243, 247.)  The court has considered these arguments but does not recount them here.

agree with Beard that the "unwillingness" exception applies as there was a lack of counsel willing to handle her case in this District. However, the matter before the court is the FDCPA action, which did not accrue until September 2013, after Beard had already retained Attorney Rubb to represent her in the mortgage foreclosure action. It is understandable and practical that Attorney Rubb would represent Beard in this FDCPA action; however, there has been no evidence submitted that Beard attempted to retain counsel in the Middle District once the FDCPA action accrued. Thus, the court finds that the unwillingness exception does not apply in this case.

Finally, turning to an appropriate hourly rate for Attorney Rubb, the court notes that Beard does not provide any declarations or other evidence for the typical rate in the Middle District of Pennsylvania for an attorney with Attorney Rubb's experience in an FDCPA action. *See Loughner*, 260 F.3d at 180 (finding that the prevailing party must establish that the hourly rate requested meets the standard using "satisfactory evidence," in addition to the attorney's own declaration). Given this deficiency in Beard's motion, and because the court has found that the forum-rate rule applies in this case, the court will not award an hourly rate of $450 as requested by Beard. Instead, the court reviews the prevailing market rates in the Middle District of Pennsylvania based on case law presented by Ocwen and its own research. *See id.*

13

The Middle District of Pennsylvania has found that the prevailing rate in FDCPA actions ranges from $200 to $375. *See, e.g.*, *Way v. MNS & Assocs. LLC*, No. 4:20-cv-305, 2020 WL 6343141, at *4 (M.D. Pa. Oct. 29, 2020) (adjusting counsel's rate from $400 to $325 for the prevailing market rate in the Williamsport vicinage rate in an FDCPA action); *Romeo v. Simm Assocs., Inc.*, 170 F. Supp. 3d 750 (M.D. Pa. 2016) (finding that a rate of $375 per hour was appropriate for an attorney with 16 years of experience in consumer protection law); *Evankavitch v. Green Tree Servicing, LLC*, No. 3:12-cv-2564, 2014 WL 4437645 (M.D. Pa. Sept. 9, 2014) (approving hourly rates from $225 to $315 in a FDCPA action); *Lukawski v. Client Servs., Inc.*, No. No. 3:12-cv-2082, 2013 WL 6154544, at *2 (M.D. Pa. Nov. 22, 2013) (noting that in 2011, the court determined "a benchmark fee rate of between $200 and $300" in FDCPA cases in this District). Based on a review of the case law in the Middle District applying the prevailing market rate for an experienced consumer protection law attorney and considering the passage of time since these rulings, the court finds that a rate of $375 per hour is appropriate for an experience consumer protection law attorney in the Middle District of Pennsylvania. *See Romeo*, 170 F. Supp. 3d at 751–52. Accordingly, the court will reduce Attorney Rubb's hourly rate from $450 to $375 per hour.

### B. Legal Research Fees

Turning to specific categories of fees, Ocwen challenges the 57.5 hours of time spent researching "the basic standards for demonstrating entitlement to damages" particularly given Attorney Rubb's representation that he is an expert in handling FDCPA cases.  (Doc. 238, pp. 15–16.)  However, besides citing to a handful of cases supporting this proposition, Ocwen does not provide specificity as to why each research time entry is unreasonable.  (*See id.*)  Beard points out this lack of specificity and argues that the 57.5 hours of research time spent between 2014 and 2017 is reasonable and not an inordinate amount of time.  (Doc. 239, pp. 15–17.)  In the sur-reply filed in connection with this motion, Ocwen submits that, at a minimum, the research time must be significantly reduced.  (Doc. 243, pp. 12–15.)  Specifically, Ocwen argues that the 5.0 hours spent researching "the basic premise of damages" is unreasonable.  (*Id.* at 14–15.)  Similarly, the 18.3 hours spent on research in relation to Beard's motion for partial summary judgment is inconsistent with counsel's claim that he is an expert on FDCPA law.

Generally, "a seasoned attorney in a particular area of law should be sufficiently familiar with that law that he would not have to spend 'an inordinate amount of time researching that same law.'"  *Slantis v. Capozzi & Assocs., P.C.*, No. , 2011 WL 2531752, at *4 (M.D. Pa. June 24, 2011) (quoting *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983)).  However, counsel may wish

15

to research cases that are factually similar to the case before the court.  *Id.*  The
court does not find the 57.5 hours spent on legal research by Attorney Rubb
unreasonable in this case.  These hours, which were billed between 2014 and 2017,
were spent in relation to specific tasks in this case, including Beard's motion for
partial summary judgment, the cases cited by Defendants in opposition to that
motion, multiple motions for reconsideration filed by Defendants, and Defendants'
motions in limine.  The court is satisfied that the research time is not "an inordinate
amount of time" over the course of this litigation.  Therefore, the court will not
reduce Attorney Rubb's time in this regard.

### C. Travel Time Fees and Costs

Next, Ocwen challenges 45.9 hours of travel-related attorney's fees that
totals $20,655 and travel-related costs in the amount of $3,058.11.  (Doc. 238, pp.
16–17.)  Submitting that there is no evidence that "forum counsel" was unwilling
to represent Beard in this matter, Ocwen argues that the travel fees and costs are
inappropriate.  (*Id.*)  Beard asserts that because she has clearly shown that the
"unwillingness exception" to the forum rate rule applies in this case, Attorney
Rubb should be reimbursed for his travel time and expenses.  (Doc. 239, pp. 17–
18.)

"[W]here forum counsel are unwilling to represent the plaintiff," travel time
and fees are compensable.  *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d

694, 710 (3d Cir. 2005).  However, "under normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, [or] travel costs."  *Id.*  Because the court has found that the "unwillingness exception" does not apply in this case, Ocwen has provided sufficient support that Attorney Rubb's travel time and costs are unreasonable.  Thus, the court will reduce the requested attorney's fees by 45.9 hours and costs by $3,058.11.

### D. Block-Billed Time Entries

Ocwen argues that Attorney Rubb's time entries contain 59 hours of block-billed entries that make it "impossible to glean how much time was apportioned to each individual task."  (Doc. 238, pp. 17–18.)  Thus, in accordance with case law, Ocwen submits that counsel's fees should be reduced by 59 hours.  (*Id.*)  In opposition, Beard submits "compensation for services performed cannot be denied simply *because* the services are reflected in a block billed time entry."  (Doc. 239, pp. 18–19.)

"Block billing is a common practice which itself saves time" and "will be upheld as reasonable if the listed activities reasonably correspond to the number of hours billed."  *Schlier v. Rice*, No. 3:04-cv-1863, 2009 WL 5182164, at *6 (M.D. Pa. Dec. 22, 2009).  However, "[w]here the court is unable to separate unrecoverable time from recoverable time in such billing entries, the court may reject the entire billing entry."  *Walker v. Gruver*, No. 11-cv-1223, 2013 WL

5947623, at *3 (M.D. Pa. Nov. 5, 2013) (citing *Rode*, 892 F.2d at 1191).

Additionally, if "a block entry is confusing or makes it difficult to allocate

reasonable time to a specific task, 'the blame lies on the party seeking fees because

they were in the best position to mitigate any confusion.'" *Dixon-Rollins v.*

*Experian Info. Sols., Inc.*, No. 09-646, 2010 WL 3734547, at *5 (E.D. Pa. Sept. 23,

2010 (quoting *United States v. NCH Corp.*, No. 05-881, 2010 WL 3703756, at *5

(D.N.J. Sept. 10, 2010)).

Here, Beard does not attempt to "mitigate any confusion" on her block-

billed time entries.  A review of the entries compiled by Ocwen confirms that for

the majority of the entries there is no way to know how long Attorney Rubb spent

on each task in the block-billed entry.  (*See* Doc. 238-2, pp. 3–8.)  Thus, the court

will reduce the number of hours by these entries.  However, there are four entries

that are sufficiently clear enough that the court will permit the block-billed entries.

Specifically, the court will permit the following block-billed time:

> 1) 0.8 hours on September 24, 2014, for "Conference telephone call to
> review Joint Case Management Plan with Francis X. Crowley, Esquire,
> Kyle E. Vellutato, Esquire, and Sherri J. Braunstein, Esquire."

> 2) 7.0 hours on May 30, 2015, for "Continued Legal Research re
> Motion for Summary Judgment; Drafting Motion for Summary
> Judgment; Drafting of Statement of Undisputed Facts; Drafting Brief
> in Support of Motion for Summary Judgment."

> 3) 6.0 hours on May 31, 2015, for "Revisions to Motion for Summary
> Judgment; Revisions to Brief in Support of Motion for Summary
> Judgment."

> 4) 11.0 hours on June 1, 2015, for "Finalization of Motion for Summary
> Judgment and attachments; Finalization of Brief in Support of Motion
> for Summary Judgment with attachments."

(*Id.* at 5–7.)  There is sufficient detail and information on the tasks completed in these block-billed entries to glean that Attorney Rubb participated in a telephone conference with multiple attorneys and spent significant time preparing Beard's motion for summary judgment and corresponding documents.  Thus, the court will reduce the requested attorney's fees by 34.2 hours.

### E. Clerical Work

The next category of time entries that Ocwen opposes is time spent performing administrative or clerical work.  (Doc. 238, pp. 18–19.)  Ocwen argues that administrative tasks should not be billed to Ocwen and, if an entry is for paralegal work, the court should reduce the attorney's rate for that entry to that of a paralegal.  (*Id.*)  Because the court has already accounted for two of the entries at issue, which are block-billed entries, the court will only consider Ocwen's argument regarding a clerical rate for 0.5 hours.  (*See* Doc. 238-2, p. 12.)

Beard argues that because Attorney Rubb is a solo practitioner, the Third Circuit does not require use of a paralegal rate for paralegal tasks.  (Doc. 239, pp. 19–21.)  She further asserts that where the hours being disputed are minimal, the court should not discount the hours.  (*Id.*)

19

If counsel would not bill hours to his own client, those hours are not properly billed to an adversary. *Pub. Int. Rsch. Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995). While delegation of certain tasks to paralegals and junior associates at small firms is not always possible, "purely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989); *Disciullo v. D'Amrosio Dodge, Inc.*, No. 06-1775, 2008 WL 4287319, at *5 (E.D. Pa. Sept. 18, 2008); *Sheffer v. Experian Info. Sols., Inc.*, 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003). Here, the 0.5 hours at issue are purely clerical and secretarial tasks. These time entries consist of receiving funds from Beard for placement in escrow, filing Exhibit D to the complaint, and a conference with a court reporting service to schedule a court reporter for depositions. (*See* Doc. 238-2, p. 12.) Thus, because these tasks are purely clerical, the court will reduce the hours billed by Attorney Rubb by 0.5 hours.

## F.  Discovery Dispute

Ocwen submits that the court should adjust the requested hours downward on a discovery dispute based on the results obtained. (Doc. 238, pp. 19–20.) Specifically, Beard unsuccessfully litigated a deposition noticed by her wherein the court ruled that Beard's notice was "overbroad and in violation of Rule 30(b)(6)" and was "far too broad and too general." (*Id.* (quoting Doc. 29, p. 1.).) Ocwen

argues that Attorney Rubb's hours should be reduced by 10.4 hours based on this unsuccessful discovery dispute.  Conversely, Beard argues that Ocwen misinterprets the law on time spent litigating "unsuccessful claims."  (Doc. 239, pp. 21–23.)  In doing so, Ocwen erroneously interprets an unsuccessful claim as an unsuccessful discovery dispute, which other courts have rejected.  (*Id.*)

The court can adjust the lodestar downward based on the results obtained, particularly, for "time spent litigating wholly or partially unsuccessful claims." *Rode*, 892 F.2d at 1183.  However, the case law cited by Ocwen and reviewed by the court clearly shows that a reduction of the hours bills is warranted for claims that were litigated in good faith but were unsuccessful, not an unsuccessful discovery dispute.  *See Rode*, 892 F.2d at 1183 (reducing hours spent working on solely unsuccessful claims); *Borrell v. Bloomsburg Univ.*, 207 F. Supp. 3d 454, 522–23 (M.D. Pa. 2016) (finding a reduction appropriate for litigation of unsuccessful claims).  While Beard cites to cases outside of this Circuit and District, the court need not consider those as it is satisfied that Ocwen has not met its burden of showing that a reduction of hours for litigating an unsuccessful discovery dispute is appropriate.  Thus, the court will not reduce Attorney Rubb's hours in this regard.

### G. Vague and Non-Specific Time Entries

Lastly, Ocwen argues that the court should reduce the hours requested for those entries that are vague and non-specific. (Doc. 238, pp. 20–21.) Ocwen specifies 21.0 hours of vague and non-specific entries that should be disallowed because the review of email, correspondence, and conferences are "described so cryptically that it is impossible to determine whether the time purportedly spent was reasonable." (*Id.* at 21.) In opposition, Beard argues that Ocwen misapprehends the case law requiring reduction for vague and non-specific entries. (Doc. 239, pp. 24–25.) Beard submits that the seventy-five time entries that Ocwen seeks to strike are specific enough because they state the person communicated with and the action being done, i.e. "Review email correspondence of Sherri J. Braunstein, Esquire." (*Id.*)

A party's fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys." *Souryavong v. Lackawanna Cnty.*, 159 F. Supp. 3d 514, 534 (M.D. Pa. 2016) (quoting *Rode*, 892 F.2d at 1190). While a fee petition need not show "the exact number of minutes spent nor the precise activity to which each hour was devoted," it should be specific enough for the court "to determine if the hours claims are unreasonable for the work performed." *Id.* (quoting *Washington v. Phila. Cnty. Ct. of Common*

*Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996)).  Courts within this District have stricken time entries for vagueness and lack of specificity.  *See, e.g.*, *Souryavong*, 159 F. Supp. 3d at 534–35 (reducing hours claimed for lack of specificity in time entries such as "TC from Nelson regarding case" and "Legal research for case").

Here, the court agrees with Beard that she provided sufficient specificity for the 21.0 hours that Ocwen seeks to strike.  Attorney Rubb states the task he conducted – such as "conference with" or "email correspondence to" – and specifies the person with whom he completed that task.  (*See* Doc. 238-2, pp. 13–19.)  Additionally, Attorney Rubb's entries for these tasks state the date each task occurred and the specific amount of time spent on the task.  Therefore, the court finds that Ocwen has not met its burden for the court to strike these time entries.

**CONCLUSION**[5]

For the reasons stated herein, the court will grant Beard's motion for attorney's fees in part.  (Doc. 234.)  Specifically, the court reduces Attorney Rubb's hourly rate from $450 to $375 per hour, reduces the hours requested by 80.5 hours, and reduces the costs requested by $3,058.11.  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: January 9, 2024

---

[5] In her reply brief, Beard requests compensation for the 20.5 hours spent preparing the reply brief to her fee petition.  (Doc. 239, pp. 25–26.)  Although case law provides the court discretion to award these fees, the court finds it inappropriate to do so here.  Ocwen filed a brief in opposition raising non-frivolous arguments supporting the reduction of Attorney Rubb's hourly rate and certain hours billed.  Thus, the court finds it inappropriate to grant Beard additional fees for a well-litigated fee dispute.